**Peter S. Sarelas, Plaintiff-Appellant, Cross-Appellee, v. The Law Bulletin Publishing Company, a Corporation, Lanning MacFarland, Jr., Joseph G. Stadelman, Jr., Defendants-Appellees, Cross-Appellants.**

**Gen. No. 52,794.**

First District, First Division.

September 29, 1969.

Peter S. Sarelas, pro se, of Chicago, appellant.

Ashcraft, Olson, Beach, Kimball, Alexander & Edmonds, of Chicago (William H. Alexander and Paul P. Didzerekis, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a libel action. Plaintiff appeals from a summary judgment entered in favor of defendants. Defend-

ants cross-appeal from the denial of their motion to have an assessment of costs and attorneys' fees and for relief under sections 41 and 57(5) of the Civil Practice Act.

Plaintiff's primary contention is that the publication of a newspaper article by defendants constituted actionable libel. The article appeared in the April 16, 1965, issue of the "Chicago Daily Law Bulletin," a publication of the defendant Law Bulletin Publishing Company, and consisted of the following:

> "JURY TRIAL REPORT
>
> "This department, to cover personal injury trials, has been established on a tentative basis at the request of a number of lawyers. It can only be maintained through the cooperation of the trial lawyers. The editors of The Bulletin would be pleased to receive comments on this venture from its readers.
>
> ". . .
>
> "GENERAL NUMBER AND TITLE:
>
> "58 S 16262—Peter S. Sarelas v. Constantine D. Chapralis, alias Major C. D. Chapralis and the Greek-American Publishing Co.
>
> "SUMMARY:
>
> "Libel in any language: Plaintiff-attorney brought suit against the defendant C. D. Chapralis, a former major in the Greek Army and publisher of a Greek-American publication for allegedly referring to the plaintiff in a newspaper article as 'exallos kai allo-from' (phonetic spelling).
>
> "Plaintiff interpreted this phrase or word to mean in English 'maniac' or 'crazed.' In his closing argument defendant's attorney reminded the jury of the old adage: 'Sticks and stones will break my bones, but names will never hurt me.'

208

"VERDICT: .

"Jury finding April 15 in favor of plaintiff and against defendants for $1.

"Case assigned April 2 to Judge Irving Landesman.

"ATTORNEY FOR PLAINTIFF: Peter S. Sarelas, pro se.

"ATTORNEY FOR DEFENDANTS: Peter J. Tatooles."

Plaintiff filed his complaint on April 15, 1966. On June 29, 1967, after a hearing in which the court considered pleadings, affidavits, exhibits, plaintiff's counteraffidavits, and plaintiff's renewed motion to "transfer venue to another county," an order was entered by the trial court as follows:

The Court finds:

That there is no genuine issue as to any material fact;

That as a matter of law the publication complained of herein was and is privileged; and

That the defendants herein are entitled to judgment as a matter of law;

WHEREFORE, It Is Hereby Ordered that the plaintiff's motion to transfer venue to another County and to strike or deny the motion of defendants for summary judgment be and the same are hereby denied;

IT IS FURTHER ORDERED that the motion of the defendants for summary judgment be and the same is hereby granted;

IT IS FURTHER ORDERED that summary judgment be and is hereby entered in favor of the de-

fendants and against plaintiff; and that plaintiff take nothing by his said suit;

IT IS FURTHER ORDERED that the Defendants have and recover their costs of and from the Plaintiff.

This is the order from which plaintiff appeals.

The following issues are presented by plaintiff's appeal: (1) whether the trial court improperly denied plaintiff's petition for a change of venue from all of the judges of Cook County; (2) whether the publication in question was privileged; (3) whether plaintiff was improperly "deprived of his constitutional right to jury trial of fact questions by the granting of defendants' motion for a summary judgment"; and (4) whether defendants complied with Supreme Court Rule 323 in their nonverbatim "Proposed Report of Proceedings."

Initially considered is plaintiff's contention that the trial court improperly denied his petition for a change of venue from all the judges of the Circuit Court of Cook County.

Defendants' motion for summary judgment was filed on August 4, 1966. Later in 1966 it was assigned to Judge Ben Schwartz for hearing. After a number of continuances, during which additional and supplemental pleadings were filed by both sides, plaintiff on May 3, 1967, filed his petition for change of venue from Judge Schwartz and from all of the judges of Cook County. In this petition plaintiff charged that the "defendants through their customs and practices" of distributing gratuitously to the judges of Cook County certain of defendants' publications "exercise an undue influence" over all of the judges of Cook County. On May 3, 1967, Judge Schwartz entered an order granting a change of venue from himself and ordered that that part of the petition which asked for a change of venue from all of the judges of Cook County be referred to Judge Harold Ward. On May 8, 1967,

Judge Ward denied the petition for a change of venue from all of the judges in Cook County and referred the cause to Judge Hallett for a hearing on defendants' motion for a summary judgment.

On June 28, 1967, plaintiff filed "Objections of Plaintiff to the Jurisdiction of the Court," in which plaintiff alleged that the venue order of May 8, 1967, of Judge Ward was entered without jurisdiction and void, and plaintiff renewed his request for a change of venue from all of the judges of Cook County.

Plaintiff contends that when Judge Schwartz entered his venue order of May 3, 1967, the trial court lost jurisdiction over the case except to make a formal order transferring venue to a judge outside of Cook County. Plaintiff relies on the provisions of section 2 of the Venue Act (Ill Rev Stats, c 146), and his authorities include People v. Scott, 326 Ill 327, 157 NE 247 (1927); Mockler v. David F. Thomas & Co., 273 Ill App 121 (1933); and Talbot v. Stanton, 327 Ill App 491, 64 NE2d 388 (1946). In People v. Scott, supra, the court said (p 342):

> "Under the statute no discretion is given to the court where a petition for a change of venue is made on account of the prejudice of the trial judge. . . . The statute gives an absolute right to a change of venue to the petitioner when his petition is duly made and verified and filed in accordance with the statute."

In Talbot v. Stanton, supra, it is said (p 496):

> "A change of venue is a substantial right of a litigant, not merely a matter of practice."

Defendants contend that plaintiff did not comply with sections 7 and 8 of the Venue Act, which provide:

> "§ 7. No change of venue shall be granted more than thirty days after the return day on which the defendant is required to appear unless the party applying

211

shall show that the causes for which the change is asked have arisen or come to his knowledge since the expiration of such thirty days.

"§ 8. Neither party shall have more than one change of venue."

On the question of an omnibus change of venue, in City of Chicago v. Marquardt, 30 Ill App2d 108, 173 NE2d 825 (1961), this court said (p 111):

"A change of venue is a substantial right and if a petition for a change of venue is duly made, verified and filed in accordance with the statute, it should 'receive a liberal rather than a strict construction and should be construed to promote rather than defeat the right to a change of venue, particularly where the prejudice on the part of the judge is charged'; and the court can look into the record to see whether a litigant is 'seeking to avoid a trial of the case at all events.' . . . While there is no direct authority requiring specifications of prejudice as against a single judge, it is extremely unusual that an application be made against a number of judges without any reason being assigned as to why all of them have a personal prejudice. Where six judges of a court were named, our Supreme Court said: 'It is not a practice that appeals to us.' . . . .

"It is an abuse of the Venue Act to attempt to use it to avoid an expected adverse ruling . . . and the court may look to see if the defendant is really seeking to have his trial before a judge who is not prejudiced against him or merely seeking to avoid a trial."

And at p 112:

"In the absence of specifications of prejudice or a reasonable showing of good faith in seeking a change of venue from twenty-six judges, a trial court is jus-

tified in determining that the petition is not filed in good faith, is used to abuse the Venue Act, and should be denied."

██ In the light of pertinent authorities and after considering the merits of plaintiff's venue petition, we find that the record shows that plaintiff did not comply with section 7 of the Venue Act. Plaintiff filed his petition more than 30 days after defendants' return day, but nowhere in the record does he show when defendants' undue influence over the judges of the Circuit Court of Cook County came to his knowledge. We think the trial court could properly have concluded that the petition was neither timely filed nor filed in good faith, and that it was an attempt to abuse the Venue Act. We find no error in the procedure followed by Judge Schwartz and hold Judge Ward had jurisdiction to enter the order of May 8, 1967, which denied plaintiff's petition for a change of venue from the judges of Cook County.

██ Next considered is the question of whether the summary judgment was properly granted because the publication in question was privileged as a matter of law. In a summary judgment proceeding the right of the moving party should be free from doubt. If, upon an examination of the pleadings, depositions and affidavits, it can be fairly said that a material dispute exists as to the facts, the motion for summary judgment should be denied. On the other hand, where the record shows there is no triable issue of fact, a summary judgment should be granted. DiLeo v. United States Fidelity & Guaranty Co., 50 Ill App2d 183, 187, 200 NE2d 405 (1964).

The summary judgment order states that the court heard the arguments of counsel and "read the pleadings, affidavits in support of defendants' motion for summary judgment, and all of the Plaintiff's Objections and Counter-Affidavits." Defendants' affidavits filed in support of the summary judgment included the following:

213

(1) The affidavit of John Sereno, a courthouse reporter for the Law Bulletin Publishing Company, stated that it was his assigned job to gather material for the "Jury Trial Reports" feature. On the date of the verdict in Sarelas v. Chapralis, he first consulted the pleadings in the case to determine the nature of the cause of action therein. Failing to find out much information from the pleadings "in accordance with instructions and the practice," he attempted to make contact with both counsel. After trying unsuccessfully to reach Peter Sarelas, John Sereno spoke to opposing counsel, Peter Tatooles, and asked what arguments most influenced the jury. Mr. Tatooles replied that he felt his "sticks and stones" argument was "most instrumental in persuading the jury to award Peter S. Sarelas only one dollar in damages." In addition affiant stated he did not bear any feeling of malice toward Peter S. Sarelas.

(2) The affidavit of James L. Kellett, the Chief Courthouse Reporter for the Law Bulletin Publishing Company, stated that he was the immediate supervisor of John Sereno and that he and his courthouse staff were instructed to gather the reports of all Law Division jury verdicts rendered so that they might be published promptly thereafter; that he and the courthouse staff were further instructed by the publisher to include in such reports, when possible, "a description of the arguments or factors which, in the opinion of counsel involved in the reported litigation, most influenced the jury." He also stated that he had no malice toward Peter Sarelas.

(3) The affidavits of Joseph Stadelman, Jr., and Lanning MacFarland, Jr., both stated that it was the purpose of the "Jury Trial Reports" feature to serve the legal community; that this purpose would not be furthered if material detrimental or damaging to the legal community at large were published. Furthermore, there was no specific intent to injure Mr. Sarelas as four of the five jury verdicts heard the same day as Sarelas

214

v. Chapralis were also published in the "Jury Trial Reports" section on the day in question. They both stated they had no malice toward Mr. Sarelas.

Defendants' motion was also supported by an evidence deposition of Peter Tatooles, the attorney mentioned in the article, in which he stated that he did make the argument, "Sticks and stones will break my bones, but names will never hurt me."

As to the summary judgment, plaintiff further contends that under the sham and pretense of summary judgment procedure, he was deprived of his constitutional right to a jury trial of fact questions, as demanded. He asserts the amended complaint, defendants' answer and plaintiff's reply to defendants' answer raised triable issues of fact to be tried by a jury, as demanded, and where a defense raising an issue of fact as to plaintiff's right to recover is set up, a summary judgment must be denied. Diversey Liquidating Co. v. Neunkirchen, 370 Ill 523, 527, 19 NE2d 363 (1939).

Plaintiff's authorities include: "Where, as here, it is apparent that a controversy does exist, the entry of a summary judgment is improper," (Barkhausen v. Naugher, 395 Ill 562, 567, 70 NE2d 565 (1946)); "The duty of the trial judge in summary judgment proceedings is to determine whether an issue of fact exists, not to resolve facts in dispute. Summary judgment procedure may not be used . . . to impair the right of trial by jury where there remains a factual issue"; "[T]he right of the moving party must be free from doubt, and accordingly, the supporting affidavits are to be construed most strongly against the movant and the entire record must be considered," (Zemel v. Chateau Royale Corp., 35 Ill App2d 313, 315–16, 182 NE2d 383 (1962)); "It is elementary that a motion under section 57 of the Civil Practice Act is not intended to be used as a means of trying an issue of fact," (Soelke v. Chicago Business Men's Racing Ass'n, 314 Ill App 336, 338, 41 NE2d 232 (1942).)

Plaintiff further argues that in the instant case the existence of a controversy is readily apparent, and that "it is plain and obvious that the Court's Order granting defendants' Motion for summary judgment, usurped the function of the jury, and is an unconstitutional abuse of power," (Bass v. Hoagland, 172 F2d 205, 209); "The right of trial by jury as heretofore enjoyed, shall remain inviolate," (Illinois Constitution, Article II, section 5).

Plaintiff further asserts that, "In the instant case, the summary judgment procedure was used as an instrumentality to deprive the plaintiff of equal access to courts to prevent or redress wrong and to enforce rights; a right which is guaranteed by the Due Process and Equal Protection clause of the Fourteenth Amendment to the Federal Constitution. Hatfield v. Bailleaux, 290 F2d 632, 636 (9th Cir, 1961); In re Ah Fong, CC Cal, 1874, 1 Fed Cas No. 102, 3 Sawy 144; Stitltner v. Rhay, 322 F2d 314, 316 (9th Cir, 1963); Spires v. Bottorf, 317 F2d 273, 274 (7th Cir, 1963).

> " 'The very essence of civil liberty certainly consists in the right of *every individual* to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.' (Emphasis added.) Marbury v. Madison, 1 Cranch 137, 163, CJ Marshall. Illinois Constitution, Article II, Section 19."

Defendants admit the publication but deny that the subject matter is libelous and assert that even if the article was defamatory it was privileged as a report of a judicial proceeding. Defendants contend the privilege to report judicial and other governmental proceedings is protected by the State and Federal constitutional guarantees of free speech and press, and in support cite Lulay v. Peoria Journal-Star, Inc., 34 Ill2d 112, 214 NE2d 746 (1966), and Segall v. Lindsay-Schaub Newspapers, Inc., 68 Ill App2d 209, 215 NE2d 295 (1966).

216

In Lulay v. Peoria Journal-Star, supra, the defendant newspaper published an article describing plaintiff's appearance before the Health Department, in which plaintiff promised to clean up several sanitary code violations which the defendant had listed in the article. The plaintiff claimed that the article was libelous per se, and the court said (p 114):

> "The only sustainable conclusion from the record is that the defendant's publication is an accurate and capsulized summation of the plaintiff's six weeks of difficulty with the Peoria Health Department. The right to speak and print about such actions of government is well established; denial of this right would be a serious infringement of both State and Federal constitutional guarantees of free speech and press. . . . The trial court accordingly erred in holding that the defendant's publication was libelous per se; the court should have recognized and applied the defense of privilege as a matter of law."

In Lulay, the court further stated (p 115):

> "Section 611 of the Restatement of Torts definitely expresses the prevailing, if not unanimous, weight of judicial authority. The right to report the activities of 'a municipal corporation or of a body empowered by law to perform a public duty is privileged, although it contains matter which is false and defamatory, if it is (a) accurate and complete or a fair abridgment of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed.' The privilege plainly includes the right to report the activities of such agencies as the Peoria Health Department. . . .

> "The privilege to report governmental acts or utterances can only be defeated by proving that a particular publication was motivated solely by actual

malice. . . . As expressed in the Restatement of Torts, section 611, a publication reporting government proceedings is nonactionable unless published 'solely for the purpose of causing harm to the person defamed.' The burden of proving actual malice is always upon the plaintiff, and it would not be the ordinary case where a plaintiff could establish that a news report or discussion of governmental activities was only published because of actual malice. . . . Although the plaintiff contends that the defendant here was guilty of actual malice, plaintiff did not offer any evidence remotely creating an issue of fact as to whether defendant's news article was conceived or inspired solely because of a malicious design to injure the plaintiff or his business. The plaintiff had the obligation both upon the motion for summary judgment and at the trial to adduce all of the evidence he believed would satisfy his burden."

In Segall v. Lindsay-Schaub Newspapers, supra, the plaintiff contended that the defendant's newspaper articles were libelous per se and injured or damaged him as a lawyer. The article concerned statements made during an arraignment of plaintiff's client on an indictment charging the illegal use of weapons. There the court said (p 213):

"If the acts, declarations or records of agencies in the lower levels of government are privileged within the limitations thus stated, it seems almost perfunctory to assert that proceedings in open court in connection with a pending criminal case are likewise privileged."

And at p 214:

"Where actual malice is the keystone of recovery in the publication of courtroom happenings and rests on extrinsic facts, it would seem that such a charge

should not come into the courtroom naked, but should be clothed with factual allegations from which the actual malice might reasonably be said to exist. This is particularly true of courtroom events. The public is interested in them and this is as it should be. The news media should not operate in this area with a sword of Damocles hanging over its head and be subjected to a categorical charge of malice where the contents of the publication are neither libelous per se nor on their face maliciously made."

█ Using the guidelines set forth in Lulay and Segall, we conclude that the trial judge was correct in finding that defendants' article was privileged. Under the standards of Restatement of Torts, section 611, which was adopted in Lulay, the publication of a report of judicial proceedings (p 115) "is privileged, although it contains matter which is false and defamatory, if it is (a) accurate and complete or a fair abridgment of such proceedings, and (b) not made solely for the purpose of causing harm to the person defamed." In the instant publication there is no dispute as to the accuracy of the report other than the statement that the defendant Chapralis was a Major in the Greek army, for the evidence deposition of Peter Tatooles shows that he did make the "sticks and stones" argument. The alleged erroneous calling of Chapralis a Major is not enough here to make the report inaccurate. In Storey v. Wallace, 60 Ill 51, 54 (1871), it was said:

"It has become the settled law, both of England and of this country, that a faithful report of the proceedings of courts of justice is a privileged publication, and shall not be held a cause of action for libel. The courts consider the advantage to the community from such publication so great, that private inconvenience must yield to the general good."

Plaintiff further argues that even if the report were privileged, defendants have abused that privilege because

219

they acted in bad faith and with malice toward the plaintiff. He contends that this issue should have been decided by a jury. In support plaintiff cites Flannery v. Allyn, 75 Ill App2d 365, 221 NE2d 89 (1966), where the court held (p 384):

> "In a case where there is a qualified privilege and malice is therefore not inferred, the burden of proving malice is upon the plaintiff, and this must be proven to the satisfaction of the jury."

■■ In our opinion it is obvious that the instant publication was not made for the sole purpose of causing harm to plaintiff. The defendants in their affidavits said the purpose of their "Jury trial report" was to assist the bar in showing what the relevant arguments of counsel were, and that they held no malice toward plaintiff. Plaintiff's counteraffidavit contained nothing to raise an issue of fact as to malice, and it was his burden to do so. As the court said in Lulay (p 116):

> "The plaintiff had the obligation both upon the motion for summary judgment and at the trial to adduce all of the evidence he believed would satisfy his burden."

We conclude that while a report by a newspaper of a judicial proceeding "is conditionally or qualifiedly privileged" (see 33 ILP, Slander and Libel, § 55), the pleadings and supporting affidavits here show there was no issue of fact as to any false statement or that the article was written maliciously.

■■ For the reasons given, the summary judgment order from which plaintiff appeals is affirmed in its entirety.

Judgment affirmed.

## DEFENDANTS' CROSS-APPEAL

Defendants cross-appeal from that part of the order entered on October 5, 1967, which denied the defendants' motion (petition) for assessment of costs and attorneys' fees and further relief under sections 41 and 57(5) of the Civil Practice Act. The statutes involved are:

> "§ 41. Untrue statements. Allegations and denials made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial."

> "§ 57. Summary judgments and decrees. . . .

> "(5) Affidavits made in bad faith. If it appears to the satisfaction of the court at any time that any affidavit presented pursuant to this section is presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing it to pay to the other party the amount of the reasonable expenses which the filing of the affidavit caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt."

The record shows that on June 29, 1967, and upon the granting of defendants' motion by the court, defendants presented to the court their motion for relief pursuant to sections 41 and 57(5) of the Civil Practice Act. Upon objection by plaintiff that he had received no notice of the motion, the court refused to accept the motion for

221

that reason and directed that notice be given and the motion presented again.

Subsequently, and on October 5, 1967, Judge Hallett entered the following order:

> This cause coming on to be heard upon the motion of plaintiff for rehearing and to reconsider and vacate order entered on June 29, 1967, granting defendants' motion for summary judgment, and on the motion of defendants for leave to file petition for relief under Sections 41 and 57(5) of the Civil Practice Act, Chapter 110 Illinois Revised Statutes, the Court having heard the arguments of counsel in open court and being fully advised in the premises, IT IS ORDERED:
>
> > That the motion of plaintiff is denied.
> >
> > That leave is granted defendants to file instanter said motion with affidavit and addendum and memorandum of authorities in support thereof.
> >
> > That plaintiff is granted leave to file instanter objections to defendants' motion and to file counter-affidavits. The defendants' petition (motion) for relief under CPA 41 and 57(5) is hereby denied.

On November 29, 1967, Judge Hallett certified as correct reports of proceedings before him on June 29, 1967, and on October 3, 1967. The October 1967 report covered the hearing on defendants' motion for attorneys' fees and shows that the court denied defendants' motion for the reasons that: (1) the motion was not filed within thirty days, and (2) because there had been no "trial" as that term is used in section 41 of the Civil Practice Act.

Considered first is plaintiff's contention that Judges Ward and Hallett improperly certified defendants' "excerpt" of argument as a "report of proceedings" under

Supreme Court Rule 323. The record shows that on November 29, 1967, after notice to plaintiff, Judge Hallett certified a "report of proceedings" which defendants presented to him. This report consisted of excerpts of hearings of the above entitled cause before Judge Albert E. Hallett on June 29, and October 3, 1967, and contained the arguments of counsel and the reasons for the judge's denial of defendants' motion for relief under sections 41 and 57(5) of the Civil Practice Act. On December 12, 1967, Judge Ward certified a nonverbatim report of proceedings that were held before him on his hearing of plaintiff's motion for a change of venue from all judges in Cook County. This report also contained a summary of arguments and reasons for the court's decision.

Plaintiff contends that what was said by the court and counsel in the consideration and disposition of a motion is not properly incorporated in a "report of proceedings." Plaintiff's authorities include People v. Chytraus, 183 Ill 190, 55 NE 666 (1899); Klikowski v. Ziegler, 16 Ill App2d 583, 149 NE2d 773 (1958); and People v. Psi Upsilon Fraternity, 320 Ill 326, 150 NE 677 (1926).

In People v. Chytraus, supra, the court said (p 192):

> "What was said by counsel and the court in the consideration and decision of the motion to set aside the order of dismissal was in no sense proper to be incorporated in the bill of exceptions."

In Klikowski v. Ziegler, supra, it was held that arguments of counsel on a motion concerning the pleadings are not of themselves a report of the proceedings as the term is used in the Practice Act, since the appeal is from the order entered and not from the reasons advanced therefor.

In People v. Psi Upsilon Fraternity, supra, it was said (p 328):

> "The rule is, that in cases where, as here, the error complained of appears on the face of the record there

223

is no necessity to except to the ruling, and it is not necessary, therefore, that there be a bill of exceptions be filed in this court."

Defendants note that Rule 323(a) provides that a report of proceedings may include "any other proceedings that the party submitting it desires to have incorporated in the record on appeal." From this defendants assert that a report of proceedings is not limited only to evidence, and it may include oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. Defendants further state, "The intention of these defendants in having the reports of proceedings made a part of the record on appeal and having them certified by the trial judge was so that this court could see what the judge's oral rulings and his reasons therefor were concerning his denial of the motion (petition) of the defendants pursuant to Sections 41 and 57(5) of the Illinois Civil Practice Act."

We agree with defendants and find that under Rule 323(a) it was proper for both Judges Ward and Hallett to certify defendants' excerpts from the record, which dealt only with matters pertinent to the cross-appeal and change of venue, which defendants deemed essential for the judges of this court to decide the issues presented. Also, we find that the nonverbatim report approved by Judge Ward met with the requirements of Rule 323(c). In view of the foregoing, plaintiff's motion to strike these reports, heretofore taken with the case, is denied.

Considered next is whether defendants' section 41 motion for relief was timely filed and properly denied. On July 29, 1967, and within thirty days of the entry of the summary judgment order, plaintiff filed a motion for a rehearing and reconsideration and vacation of the summary judgment. On August 11, 1967, defendants served

notice that on August 15 they would again move for relief under sections 41 and 57(5). On August 15, 1967, the trial court entered an order continuing for hearing to October 3, 1967, plaintiff's motion for rehearing and defendants' motion for leave to file their section 41 motion. On October 3, 1967, and after a hearing, the trial court orally granted defendants leave to file their section 41 motion but denied the motion because (1) the motion was not filed within thirty days of the summary judgment order, and (2) there had been no "trial" as that term is used in section 41 of the Civil Practice Act.

The remarks of the court at that time include: "Now there isn't any trial. In other words in my opinion, where the attack is not on the untruth of the statement, but where the suit is thrown out because, as here, I hold it is the statement is privileged and the complaint does not state a cause of action, I don't think that's appropriate for a 41 motion. . . . I have had this before, this general problem, and I feel it has to be based on either a jury verdict or on a court finding of facts. . . . All right, I will give you leave to file this and I will do what I said, I will deny your motion on the grounds first it is too late and second it isn't on a trial by court." Pursuant to this oral ruling, the court entered the order of October 5, 1967.

Defendants contend that it was error for the trial court to deny the filing of their section 41 motion on June 29, 1967, because no notice was given to plaintiff. Defendants assert that plaintiff was present in open court, and the provisions of sections 41 and 57(5) do not include or provide for notice to the opposite side. In support defendants cite Eugene Matanky & Associates, Inc. v. Onixt, 74 Ill App2d 53, 219 NE2d 865 (1966), to show that no notice of the filing of a section 41 motion is required but the court must afford a hearing to the party sought to be charged with costs under section 41.

225

Defendants further contend that the post-trial motion of plaintiff for a rehearing and the vacation of the summary judgment order of June 29, 1967, stayed the jurisdiction of the trial court until October 5, 1967, the date of the disposition of plaintiff's post-trial motion. Defendants also contend that a trial court has jurisdiction until a notice of appeal is filed, and that a section 41 motion should be considered even if it is filed more than thirty days after final judgment, as long as notice of appeal has not yet been filed.

Defendants also assert that in nonjury cases section 68.3 of the Civil Practice Act provides that a post-trial motion for a rehearing or to vacate the judgment, filed within thirty days after the entry of the judgment, stays the jurisdiction of the trial court until the court rules upon that motion.

Plaintiff contends that notice of the section 41 motion was required on June 29, 1967, and when defendants for the first time properly filed the motion on October 5, 1967, it was filed past the thirty day limit required, as set forth in People ex rel. Madison Chemical Corp. v. Gurrie, 52 Ill App2d 360, 202 NE2d 123 (1964), where this court said (p 364) :

> "Since the petition for costs and fees was not filed within thirty days of the entry of the judgment and since jurisdiction was not retained by the court, the trial court correctly held that it was without jurisdiction to modify the judgment and the petition to modify was properly dismissed."

Plaintiff further cites Lewis Drainage Dist. v. Melville, 388 Ill 526, 58 NE2d 580 (1944), where the court said (p 530) :

> "At an early date in this State it was held that in statutory proceedings, even where notice is not required by the statute, on general principles notice

should be given in every case before the rights of a party can be taken away."

Also, Schroeder v. City of New York, 371 US 208 (1962), where it is said (p 212) :

> "As was emphasized in Mullane, the requirement that parties be notified of proceedings affecting their legally protected interests is obviously a vital corollary to one of the most fundamental requirements of due process—the right to be heard. 'This right . . . has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.' "

■■■ In our opinion, plaintiff's motion filed on July 29, 1967, for a rehearing and for the vacation of the summary judgment entered June 29, 1967, stayed the jurisdiction of the court in this case for the filing of defendants' section 41 motion until the disposition of plaintiff's motion on October 5, 1967. Therefore, as defendants' motion was filed on August 15, 1967, and before the disposition of plaintiff's motion for a rehearing, we find in this case defendants' section 41 motion was timely filed and the trial court had jurisdiction to hear it.

Considered next is the question of whether the summary judgment proceedings here constitute a "trial" within the provisions of section 41. Defendants cite Ready v. Ready, 33 Ill App2d 145, 178 NE2d 650 (1961), where the court, in construing section 41, said (p 159) :

> "The word 'trial' is used in many different senses. As used in the statute we think it means a judicial examination of issues between the parties, whether they be issues of law or of fact. . . . The allowance of counsel fees by the court under the statute and the facts before us was discretionary."

In our opinion, the summary judgment proceeding here came within the pronouncements set forth in Ready v. Ready, supra, and the word "trial," as used in section 41, does not necessarily mean a jury trial but a judicial examination of the issues, whether they be fact or law issues, and no finding of fact by a jury verdict is necessary for the consideration of the relief requested. The summary judgment here provided a sufficient basis for the filing by defendants of a section 41 motion, and the defendants were entitled to a hearing upon the merits of their motion.

For the reasons given, we conclude that defendants' motion for relief under sections 41 and 57(5) was timely filed because the court still had jurisdiction of the cause pursuant to plaintiff's post-trial motion for a rehearing. Also, the summary judgment proceeding here was a trial sufficient to bring defendants' motion within the terms of section 41. Therefore, and because of the foregoing reasons, that part of the order of October 5, 1967, which denied defendants' motion (petition) for relief under sections 41 and 57(5) of the Civil Practice Act is reversed and the cause is remanded to the trial court for a hearing on the merits of that motion, consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded with directions.

ADESKO, P. J. and BURMAN, J., concur.