*In re* APPLICATION OF COUNTY COLLECTOR.—(WILLIS T. HOWELL *et al.*, Petitioners-Appellants and Cross-Appellees, *v.* FRANK N. EDELEN *et al.*, Respondents-Appellees and Cross-Appellants.)

First District (2nd Division)  No. 77-995

Opinion filed October 31, 1978.—Rehearing denied December 14, 1978.

438

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin and Richard F. Johnson, of counsel), for appellants.

Allan L. Blair and Ned Langer, both of Chicago, for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

The petitioners, Willis T. Howell, Mabel Howell, and Union National Bank of Chicago as trustee under Trust No. 412, filed a petition in the circuit court of Cook County pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) to set aside a tax deed issued to the original tax purchaser's assignee, Elsie Lhotka, and her grantees, the Edelens. After an evidentiary hearing, the trial court denied the petition. A motion for reconsideration was also denied. Petitioners appeal from these orders. The trial court also denied respondents' motion for damages under section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 41.) It is from this order that respondents cross-appeal.

The issues on appeal are whether a finding of fraud is a necessary element in a collateral proceeding pursuant to a section 72 petition, and if so, whether fraud was proved in this case; and whether respondents' section 41 motion was properly denied.

The real estate taxes accruing for the year 1965 were not paid on the subject property (hereinafter lot 21), and the property was sold to Suburban Tax Lien (Suburban) in February 1967 for $110.63, which represented taxes due plus interest and costs. Suburban subsequently assigned its certificate of purchase to Elsie Lhotka.

On December 8, 1969, after the redemption time had expired, Elsie Lhotka filed an "Application for an Order Directing the County Clerk to Issue Tax Deed." Attached to this application was an affidavit by James W. Haleas, an attorney for Elsie Lhotka, which stated that he inspected the property on August 4, 1969, and found it to be vacant and unimproved, having a frontage of 100 feet and a depth of 160 feet, and that the parties in interest, Edward J. Barrett, county clerk of Cook County, Genevieve Movisian, Union National Bank, Trust No. 412, and First National Bank of Blue Island, Trust No. 132, were served with a copy of the tax sale notice and petition.

At an ex parte hearing on December 30, 1969, Peter E. Haleas, an attorney· representing Elsie Lhotka, testified that the property was last inspected by James W. Haleas on August 4, 1969, was found to be located at 13433 Circle Avenue, Alsip, Illinois, was vacant, unimproved, and unoccupied; that James W. Haleas, on July 25, 1969, personally served notice upon J. Russell Brown, a trust officer of Union National Bank, trustee under Trust No. 412, as owner and last assessee of the property; that notice was personally served upon the county clerk and First

National Bank of Blue Island, trustee under Trust No. 132; and that taxes for the years 1966, 1967, and 1968 had been paid.

Also on December 30, 1969, the trial court found all notices required by law had been given and directed the issuance of a tax deed to Elsie Lhotka. The deed was issued that same day.

On December 29, 1972, the subject property was sold to Frank and Marilyn Edelen for $10,000. In July 1973, the Howells filed a section 72 petition to vacate the order granting Elsie Lhotka a tax deed. An amended petition was then filed which alleged that the tax deed was procured through fraud in that its issuance was based upon a false affidavit, false testimony, misrepresentations and lack of due diligence by the tax buyer, and that the tax buyer failed to give statutory and constitutional notice of the tax deed proceedings to Howell as occupant of the property. The petition further alleged that the Edelens were not bona fide purchasers of the property.

Both Elsie Lhotka and the Edelens filed motions to dismiss the petition. The trial court denied Elsie Lhotka's motion but granted the motion of the Edelens, finding they were protected as bona fide purchasers. Upon appeal, this court reversed the trial court ruling, granting the Edelens' motion to dismiss the section 72 petition, finding that sufficient allegations were made to establish that the Edelens may not have been bona fide purchasers. (See *In re Application of County Treasurer* (1st Dist. 1975), 30 Ill. App. 3d 235, 332 N.E.2d 557.) The case was then remanded for a hearing on the section 72 petition.

At that hearing Willis T. Howell testified that in 1966 he purchased two vacant lots, lots 20 and 21, which were adjacent to the Howell Airport which he owned and operated. Lot 21 was an irregularly shaped lot with dimensions of 100′ by 402.50′ by 342.60′ by 259.40′ by 461.50′. Title in both lots was placed in the Union National Bank of Chicago as trustee under Trust No. 412 of which Willis T. Howell was the sole beneficiary.[1] Howell testified that in 1966 he began to improve the property by leveling and grading it, and that this took several years to complete. He stated that he installed airplane tiedowns on the eastern side of lot 21. These tiedowns were metal rods with a loop on the top where a rope was tied and then attached to the plane to keep it from moving; and that the stakes for the tiedowns were driven into the ground so that only three inches of the stake was visible above the ground. An old airplane tire was placed around the top of each tiedown to make them more visible. Howell testified that he rented these tiedowns out to the airport customers from 1967 to 1973, except during the springtime when the ground was too wet

---

[1] In 1970, a part of a divorce decree between Mabel and Willis T. Howell, title to the property was transferred to Heritage County Bank and Trust Company as trustee under Trust No. 1434.

for planes to park there. Howell testified that he also used lot 21 as a parking area for two or three helicopters. He further testified that there was a visible pathway coming from his property onto lot 21.

Howell testified that in the spring of 1970, his son told him a man had put up a "For Sale" sign on the property and said he owned the lot; and that he drove out to the property but did not find any sign. In a prior deposition Howell stated that he called his attorney, Will Gierach, regarding the "For Sale" sign, but at the hearing he stated that he did not call Gierach.

Willis E. Howell, Jr. (hereinafter Howell Jr.) testified that he worked for his father at the Howell Airport during the years 1965 to 1973. He testified to the grading and leveling work being done to lot 21 during 1967 to 1969. He stated that on the average three to five planes and one to three in the winter were parked on lot 21 during 1967 to 1973, and that helicopters also parked in approximately the middle of the lot.

Howell Jr. testified that some time during 1970 or 1971, he saw Ben Lejcar putting up a "For Sale" sign on the property; that Lejcar told him that lot 21 was his property and the helicopters would have to be removed, and that he could not drive through there anymore; and that he told his father about this, but when they went to look for the sign it was gone.

Howell Jr. further testified to knowing Frank Edelen in a neighborly way. In 1973, Edelen came to the airport office and told him he owned the property, and that he related to Edelen the "For Sale" sign incident. Edelen told him he had taken the sign down. On another occasion, Edelen asked that the planes be moved off his property.

Jim Robson, one of Howell's customers, testified that he kept his plane parked 100' to 150' south of the airport maintenance shop on numerous occasions, and that there were always other planes parked on the lot. Robson also testified that he frequently saw a helicopter parked to the west of his plane; and that he did not remember a road on the lot, but that there was a path across the property.

Will Gierach, an attorney, testified that in 1966 he represented Howell in the purchase of lots 20 and 21. He learned that the 1965 taxes had not been paid and forwarded the tax bills to Howell; he also learned that one of the lots was still being assessed and taxed on the basis of an improvement which had burned some years before.

Gierach initiated an Objection 1 proceeding which at that time was the procedure to correct an error of fact that had occurred in the assessment of property. Meanwhile, Gierach instructed Howell not to pay the second half of the 1965 taxes on either lot 20 or 21 until Gierach could determine which parcel would be subject to the Objection 1 proceeding. Gierach testified that in November 1967, First National Bank of Blue

*Island (the former owner of the property) received notice of the tax sale* from Suburban. The bank forwarded this notice to Gierach as attorney for the buyer. Upon receipt of this notice, Gierach, in late November 1967, obtained estimates of redemption for both parcels. However, he did not redeem at that time. In January of 1969, postcard notice of the tax sale to Suburban was received by Union National Bank as trustee under Trust No. 412 and forwarded to Gierach.

Gierach testified that on April 3, 1969, he called Suburban at the telephone number shown on the postcard and talked to Ben Lejcar, telling him that he intended to redeem on lot 20 and that an Objection 1 proceeding was pending on lot 21. He said that Lejcar told him that there was still plenty of time left. Later that month Gierach's associate paid taxes on lot 20 and received a certificate of redemption. In July 1969, the Objection 1 order was entered correcting the assessment on lot 21, however, no redemption on that property was ever made.

In August 1969, Gierach stated that he again called Lejcar and informed him that the taxes on lot 20 had been redeemed, and that the Objection 1 proceeding on lot 21 had been successfully completed. He asked Lejcar to check his records to see if anything else was open or if any amount was still owed. Lejcar said he would check and get back to Gierach. Gierach stated that he confirmed this conversation with a letter to Lejcar dated August 28, 1969, a copy of which was sent to Union National Bank as trustee under Trust No. 412.

Gierach further testified that he again phoned Lejcar on November 26, 1969, and asked if Lejcar had checked his records pursuant to prior conversations and the August letter, and whether anything else was open on either lot 20 or 21. Gierach testified that Lejcar answered "no" and said the record had been cleared. A notation to this effect was made on the office copy of the August 28, 1969, letter. Gierach then closed the file and billed Howell for his fee.

Gierach admitted that he never looked at the county clerk's records regarding the tax sale on lot 21 until 1973, even though he had been in the building where the clerk's office is located twice a week during 1969-1970. He stated that he relied on Lejcar's representations. Gierach testified that he personally knew Lejcar, having met him at a zoning hearing, and that their work had brought them together in the past. Lejcar's attorney, Mr. Haleas, and Roy Stauber, another attorney, testified they were present at that zoning hearing, but that Lejcar was not there.

Lavinia Trimble, Gierach's secretary for the past 16 years, testified that on April 4, 1969, she took a phone message from Suburban, typed it, but left off the date. When this message was introduced into evidence it was noticed the date of April 4, 1969, had been written in. Trimble testified that the attorney who received the note probably wrote in the

date when he received the message on that day. Trimble also testified to typing a letter dated August 28, 1969, to Suburban. Two copies of the letter were made and the original sent to Suburban. One copy was sent to Union National Bank, which copy was introduced into evidence, and the other copy was placed in the office files. However, at the time of this hearing, the office copy could not be found. Instead a verifax copy of the office copy was introduced into evidence. Trimble testified that she did not remember making this verifax copy, and that it was not the usual procedure of the office to do so unless requested.

Benjamin Lejcar testified that he was an investor in real estate and purchased tax certificates using different names so as not to use the same name each year on the taxes. Lejcar purchased lot 21 at a tax sale under the name Suburban Tax Lien and assigned the certificate of purchase to his wife, Elsie Lhotka. He testified that he sold the lot to the Edelens for $100 a foot. He further testified that he visited lot 21 in August of 1967 and in the spring of 1969, and that he checked the property about twice a year to see if anyone was using it and did not observe any airplanes or helicopters on the property at any time he was there. He also denied ever knowing or conversing with Will Gierach. He testified that on November 26, 1969 (one of the dates Gierach testified he spoke to Lejcar on the phone), he was in Omaha, Nebraska, with his wife at a reunion. He admitted to stating at his prior deposition that he never took vacations and added that he would not classify a reunion as a vacation.

Elsie (Lhotka) Lejcar also testified that she was in Omaha with her husband, Ben Lejcar, on November 26, 1969.

Melvyn Smith testified that he was employed from 1967 to 1972 by Mr. Edelen to cut weeds around his house and did so about 10 to 12 times. He stated that he never observed any helicopters or planes parked on the adjoining lot.

Frank Edelen testified that in 1967 he purchased lot 22 where he resides, and that it is located just west of lot 21. He testified that in December of 1971, he noticed a "For Sale" sign on the front part of lot 21. Upon calling the phone number on the sign, he talked with Ben Lejcar and negotiated a price for the property. He testified that he did not know Lejcar prior to that time. He also stated that he had never seen a helicopter parked on lot 21 prior to closing time. On cross-examination he acknowledged that it was possible that planes were on lot 21, but since he didn't know the dimensions he couldn't tell if they were on lot 21. He also stated that after he bought the property he noticed that cars were being driven across lot 21.

Gerald Millard, an assistant tax counsel for Chicago Title Insurance Co., testified that on January 10, 1973, a title commitment was ordered on lots 21, 22, and part of 23. Two exceptions were listed on the

commitment, one being the former interest of Union National Bank under Trust No. 412, and the other the interest of Mabel Howell and Willis Howell. Millard testified that employees actually go out to the property and make a physical inspection. One of the objectives of this is to determine who is in possession of the property. Several reports of possession were made in this case, and there was no indication of helicopters or planes on the property. One of the reports listed lot 21 as being vacant.

Harry Canmann, a land surveyor and now president of Chicago Guaranty Co., testified that aerial photos were taken of lot 21 in 1967, 1969, and 1971. A map is superimposed over these aerial photos showing the location of the lot and the location of the airplanes. From the photos, Canmann testified that planes were parked on the east lot line. The planes seemed to be in the middle of the lot line. He could not testify to the presence of helicopters.

Edward Hannon, a former trust officer at Union National Bank, testified that on at least two occasions prior to the issuance of the tax deed, he received notification from Suburban that the property was ready to go to deed and this notification was sent by the bank to both Howell and Gierach. Hannon stated that Gierach was the only person on the trust agreement to whom notice was to be given, and that all letters which enclosed tax notices were addressed only to Gierach with no indication that any copies were sent to anyone else.

The trial court denied the section 72 petition, finding that the law required a finding of fraud before the tax deed could be set aside; that the evidence indicated that Howell was using at least a portion of lot 21 on a regular basis and was entitled to notice as an occupant, but given the physical description of the lot, the failure to serve Howell with notice did not constitute fraud; that the misrepresentation as to the dimensions of the lot were not fraudulent since a plat giving the correct dimensions was attached to the application for the tax deed; that the testimony regarding communication between Lejcar and Gierach was conflicting, but after observing the demeanor, attitudes, and behavior of the witnesses and considering the inconsistencies, the court believed Lejcar's version of the transaction; and in view of these findings, it was not necessary to determine whether the Edelens were bona fide purchasers.

### I.

As the facts indicated, Suburban purchased the property in question for the price of unpaid real estate taxes plus interest and costs. In accordance with section 248 of the Revenue Act of 1939 (Ill. Rev. Stat. 1965, ch. 120, par. 729), a certificate of purchase was issued to Suburban, which it later assigned to Elsie Lhotka.

Section 266 of the Illinois Revenue Act allows the tax purchaser or his assignee the right to file a petition for issuance of a tax deed within five months prior to expiration of the two-year period of redemption. (Ill. Rev. Stat. 1965, ch. 120, par. 747.) To qualify for the tax deed under section 266, a tax purchaser or his assignee must serve notices as provided in sections 263 and 266 of the Act (Ill. Rev. Stat. 1965, ch. 120, par. 744, 747).

It is petitioners' contention that respondents' failure to comply with these notice provisions and Illinois constitutional provisions rendered the tax deed null and void.

Article IX, section 5 of the 1870 Constitution, in effect at all times relevant to this case, provided as follows:

"The right of redemption from all sales of real estate, for the non-payment of taxes or special assessments of any character, whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof. And the general assembly shall provide by law for reasonable notice to be given to the owners or parties interested, by publication or otherwise, of the fact of the sale of the property for such taxes or assessments, and when the time of redemption shall expire: *Provided*, that occupants shall in all cases be served with personal notice before the time of redemption expires."

At the time the certificate of purchase was issued, section 263 of the Revenue Act required the purchaser or his assignee of real estate sold for nonpayment of taxes or special assessments to serve notice upon occupants or persons in actual possession of such real estate not less than three months prior to the expiration of the redemption date.

Section 266 of the Act provided that if the property had not been redeemed before the redemption period expired and all notices required by law had been given, the court could enter an order directing the county clerk to issue a tax deed to the purchaser or his assignee. This tax deed would be incontestable except by appeal, and section 266 would be liberally construed so that tax deeds would convey merchantable title.

In July of 1967, the General Assembly amended section 266 adding that "the court shall insist on strict proof of notice" and also provided that in addition to relief by appeal, section 72 relief could be had "in the same manner, upon the same grounds and to the same extent as may be had under that Section with respect to final orders, judgments and decrees in other proceedings."

The Illinois Supreme Court has repeatedly held that, absent fraud, failure to comply with the prerequisites for a tax deed order set forth in sections 263 and 266 of the Revenue Act does not constitute grounds for relief under section 72 of the Civil Practice Act. *Urban v. Lois, Inc.* (1963),

29 Ill. 2d 542, 548-50, 194 N.E.2d 294; *Zeve v. Levy* (1967), 37 Ill. 2d 404, 408-09, 226 N.E.2d 620; *Dahlke v. Hawthorne, Lane & Co.* (1966), 36 Ill. 2d 241, 244, 222 N.E.2d 465; *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 35-36, 344 N.E.2d 468; *In re Application of Dickey* (1978), 72 Ill. 2d 317, 323, 381 N.E.2d 260, 263.

Petitioners maintain that the Illinois Constitution coupled with the notice requirements under the 1967 amendment rendered the tax deed in the present case void regardless of fraud. In addition to the statutory provisions, petitioners rely on *Gaither v. Lager* (1954), 2 Ill. 2d 293, 118 N.E.2d 4, and *In re Application of County Collector* (3d Dist. 1972), 7 Ill. App. 3d 124, 287 N.E.2d 81, as authority for this proposition.

In *Gaither*, the supreme court held that compliance with the constitutional requirement that occupants of real estate be served with personal notice before the period of redemption expired was an indispensable condition precedent to the right to make a tax deed. (2 Ill. 2d 293, 298.) And in the case of *In re Application of County Collector*, the appellate court affirmed the trial court's finding on the basis that the respondents fraudulently secured the issuance of the tax deed, but went on to consider the effect of the 1967 amendment on a section 72 proceeding brought to set aside a tax deed.

The appellate court stated the following, upon which language petitioners rely:

"[W]e do not deem it a requisite in a section 72 proceedings that 'actual fraud' or 'intentional fraud' be present to invalidate a tax deed. In 1967 the legislature added an amendment to section 747 of chapter 120, Illinois Revised Statutes, which provided additional relief to one contesting the validity of the issuance of a tax deed.* * *

* * *

The addition of the one sentence amendment granted to the court in a section 72 proceedings the authority and power to determine if proper notice had in fact been given as required by statute. In effect this amendment added a ground for relief in section 72 proceedings in addition to the long recognized grounds of fraud, accident and mistake. To interpret the amendment otherwise would be to hold the same meaningless." 7 Ill. App. 3d 124, 128.

■■ We cannot agree with petitioners' proposition for two reasons. First, upon issuance of the certificate of purchase, Suburban acquired a property right in the said real estate subject to redemption. (*In re Application of County Treasurer* (1st Dist. 1973), 14 Ill. App. 3d 1062, 1065, 304 N.E.2d 9.) This right was contractual and protected against subsequent substantive legislative changes. (*Wood v. Lovett* (1941), 313

U.S. 362, 85 L. Ed. 1404, 61 S. Ct. 983; *People ex rel Billings v. Riggs* (1870), 56 Ill. 483; 72 Am. Jur. 2d *State and Local Taxation* §968 (1974).) Thus the law in effect at the time the certificate of purchase was obtained would apply. The 1967 amendment was not passed until July 26, 1967, a few months after the certificate of purchase had been issued on February 16, 1967.

■■ Second, in the case of *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 35-36, 344 N.E.2d 468, our supreme court held that failure of personal service of notice upon one of the property occupants did not create a jurisdictional defect in the tax proceedings. The court found tax deed proceedings to be *in rem* and not *in personam*, and that a trial court acquires jurisdiction over the land to order the issuance of a tax deed when the county collector makes his application for judgment and order for sale. The court went on to reason that the determination of whether a party has been given the notice required by statute goes to whether court should order the tax deed to issue and not to whether the court has jurisdiction in the proceeding. Although a court should not direct the county clerk to issue a tax deed until all requirements of the Revenue Act have been met, once the court finds compliance with notice requirements, that determination is conclusive upon all parties and immune from collateral attack unless fraud can be proved.

## II.

Thus, the issue becomes whether the tax deed was procured by fraud. Fraud has been defined as a wrongful intent, an act calculated to deceive. *Exline v. Weldon* (1974), 57 Ill. 2d 105, 110, 311 N.E.2d 102; *Dahlke v. Hawthorne, Lane & Co.* (1966), 36 Ill. 2d 241, 245, 222 N.E.2d 465; *Smith v. D.R.G., Inc., supra,* at 37.

The burden of proof is upon the petitioner, and the evidence must be clear and convincing and not merely suspicion. *In re Application of Dickey* (5th Dist. 1977), 51 Ill. App. 3d 697, 701, 366 N.E.2d 511, *aff'd* (1978), 72 Ill. 2d 317, 381 N.E.2d 260.

Petitioners contend fraud was established in the present case since the tax deed was issued upon false testimony and a lack of due diligence. The affidavit and testimony given at the ex parte hearing, while they may be characterized as not completely accurate, do not evidence respondents' intent to deceive the court. Although the affidavit stated that the property was 100' by 160', the application for the tax deed recited the correct legal description and attached to the affidavit and application was a sketch plat showing the correct dimensions of the lot.

■■ Petitioners maintain that respondents knew Howell to be an occupant of the property but fraudulently concealed notice of the tax deed proceedings from him. It has been held that the omission to serve any

notice at all is not necessarily fatal. (*In re Application of Dickey* (5th Dist. 1977), 51 Ill. App. 3d 701-02.) The facts that the lot was an irregular shape, that airplane tiedowns were on the eastern edge, that Howell was not in constant use of the property, that all statutory notices were sent to the bank which was registered as the trust owner of the property, and that these notices were forwarded to Howell's attorney do not present a pattern of fraudulent concealment.

Petitioners also contend that fraud was established by misrepresentations made by Lejcar to Gierach. Lejcar denied ever knowing or talking to Gierach. The trial court considered inconsistencies in the testimony of both of these witnesses. Gierach's secretary testified to typing a phone message from Suburban but did not date it. This phone message was introduced into evidence bearing the date April 4, 1969. The court found that the telephone message did not come from Suburban but from Union National Bank since the contents of the message also appeared on the bank's trust history sheets dated June 27, 1969. But the court found that this message could not have been taken on April 4, 1969, since that was Good Friday and banks are closed. The court concluded that the date of April 4, 1969, "was fabricated at some later date to substantiate a telephone conversation that was testified to on April 2nd or April 3rd." Furthermore, the court found Gierach's version of the story unreasonable.

■■ The credibility of witnesses and the weight to be accorded their testimony are to be determined by the trier of fact, and unless manifestly against the weight of the evidence, that finding will not be disturbed. (*In re Application of County Collector* (3d Dist. 1972), 7 Ill. App. 3d 124, 128, 287 N.E.2d 81.) The trial court, after observing the demeanor, attitudes, and behavior of both witnesses, rejected Gierach's version of the story. Based upon the record in this case, we cannot conclude otherwise.

## III.

■■ This action was brought pursuant to a section 72 petition. (Ill. Rev. Stat. 1971, ch. 110, par. 72.) The petition was filed on July 6, 1973, over three years after the tax deed order was entered on December 30, 1969. Section 72(3) required that a petition for relief must be filed not later than two years after entry of the order, judgment, or decree from which relief is sought, but that time during which the petitioner was under legal disability or duress, or during which the grounds for relief were fraudulently concealed, shall not be included in computing the two-year period. Section 72(7) provided that nothing contained in section 72 shall affect any right to relief from a void order which may be attacked at any time regardless of the two-year limitation period in section 72(3). In view of our findings that petitioners failed to prove fraudulent concealment,

and that the court had jurisdiction to enter the tax deed order, the two-year statute of limitations was not tolled nor was the judgment upon which this action is based void. Therefore, in accordance with section 72(3), we find this action was not timely filed. See *In re Application of Dickey* (1978), 72 Ill. 2d 317, 323, 381 N.E.2d 260, 263.

## IV.

We next consider whether respondents' section 41 (Ill. Rev. Stat. 1977, ch. 110, par. 41) motion was properly denied. The trial court entered its judgment in this case on January 13, 1977. On February 14, 1977, petitioners filed a timely post-trial motion for the court to reconsider and vacate its order denying their petition.

On March 4, 1977, respondents filed a section 41 motion alleging that statements made in the section 72 petition were false and known to be untrue by petitioners at the time they filed their pleadings. On March 8, 1977, petitioners filed a motion to strike the section 41 motion. On this same date the trial court denied both petitioners' post-trial motion and respondents' section 41 motion.

The section 41 motion was denied on the ground that it was not filed within 30 days of the judgment. Respondents argue that the failure to file the section 41 motion within 30 days of judgment was not fatal since it was filed at a time when the trial court still had jurisdiction over the case due to petitioners' pending post-trial motion for reconsideration.

In interpreting the meaning of this 1976 amendment we look to legislative intent. As was stated in *Southmoor Bank & Trust Co. v. Willis* (1958), 15 Ill. 2d 388, 394, 155 N.E.2d 308:

"The primary object of statutory construction is to ascertain and give effect to legislative intent and in determining such intent we may consider the reason or necessity for the enactments, contemporaneous conditions, existing circumstances and the objects sought to be obtained by the legislation. [Citations.]"

Before the amendment, section 41 read as follows:

"Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial." (Ill. Rev. Stat. 1975, ch. 110, par. 41.)

At that time, this court reasoned in *Matanky v. Onixt* (1st Dist. 1966), 74 Ill. App. 2d 53, 55, 219 N.E.2d 865, that a section 41 motion had to be made within 30 days of judgment because after 30 days the trial court lost jurisdiction over the cause.

In *Sarelas v. Law Bulletin Publishing Co.* (1st Dist. 1969), 115 Ill. App.

2d 205, 227, 253 N.E.2d 168, the defendant filed a section 41 motion more than 30 days after judgment. The court found that the filing of plaintiff's timely post-trial motion for rehearing stayed the jurisdiction of the court for the filing of the defendant's section 41 motion until the disposition of the plaintiff's motion for rehearing.

The 1976 amendment to section 41 struck out the words "and not in good faith" and changed the last sentence to read, "to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." Ill. Rev. Stat. 1977, ch. 110, par. 41.

The following comments to this section are pertinent:

> "The second change made by the new law allows the trial court to tax costs at any time if it does so pursuant to a motion filed within 30 days of the judgment or dismissal in the cause instead of requiring that the taxing take place at the trial. This amendment merely codifies the practice that had grown up anyway, notwithstanding the language of the former section." Ill. Ann. Stat., ch. 110, par. 41, Supplement to Historical and Practice Notes, at 15 (Smith-Hurd Supp. 1978).

This statement seems to indicate that the amendment was not enacted to change existing practice, but rather so that costs could be requested during the time the court retained jurisdiction of the case rather than only at trial.

■■ Thus, we find that under the prior section, as well as under the amendment, respondents' motion for relief under section 41 was timely filed. The denial of a section 41 motion is within the sound discretion of the trial court: however, the motion at bar should not have been denied without a hearing. *Morton v. Environmental Land Systems, Ltd.* (1st Dist. 1977), 55 Ill. App. 3d 369, 374, 370 N.E.2d 1106.

In accordance with the views expressed herein, we affirm the trial court's denial of the section 72 petition, vacate the dismissal of the section 41 motion, and remand for a hearing.

Affirmed in part; vacated and remanded in part.

STAMOS, P. J., and PERLIN, J., concur.