The Atchison, Topeka and Santa Fe Railroad Company

*v.*

Mark Schneider *et al.*

*Filed at Ottawa January 25, 1889.*

1. Eminent domain—*elements of damages—in respect to a leasehold interest—evidence.* In a proceeding for the condemnation of a leasehold interest in a lot or building used for business purposes by the tenant, the jury called to fix the compensation may properly take into consideration evidence tending to show the actual value of the leasehold interest of which the tenant is sought to be deprived; the actual injury to be suffered by him from the loss, destruction or depreciation of the improvements placed by him on the property specially adapted to his business, if any is shown; the reasonable cost of removal and of refitting in another locality for the further conduct of business, as shown by the evidence; and also any injury the jury may find, from the evidence, will result to the tenant by reason of the unavoidable interruption of his business, incident to its present site and his establishment in a new location during the period of such interruption, if any is shown.

2. On the trial, the petitioners offered to prove the rental value derived from similar premises in the near vicinity, which the court refused to allow. The proposed evidence failed to show the property inquired about was similar, or in the near vicinity : *Held,* no error in refusing the testimony so offered.

3. In the same case, the tenant was allowed to state his average monthly profits during the year preceding the hearing : *Held,* that this was competent as tending to prove, with other testimony, the loss which he would incur by the suspension of business during the time necessarily consumed in moving to another place.

4. Same—*new trial—verdict against the evidence.* While the personal view of the jury in a condemnation case is in the nature of evidence, and is to be considered by them in connection with other evidence, yet this, nor any other court, has ever held that the jury may ignore all the other evidence, and fix the compensation and damages directly contrary thereto. It is only when the evidence is conflicting, that the jury may draw their own conclusions from a personal view.

5. Where there is a conflict of evidence, and the verdict is consistent with all the facts and circumstances in the case, it will not be set aside merely because the court may regard the weight of evidence in the record as against it; but when it clearly appears that the amount fixed

is inconsistent with and contrary to all the proofs, it is the duty of the court to interfere, and submit the case to another jury.

6. SAME—*new trial—excessive damages.* Where the jury have evidently acted either from passion, prejudice or mistake, and award as compensation for a leasehold interest sought to be taken, a sum which, at first blush, strikes a fair mind as being entirely too large, the court ought to set aside their verdict and grant a new trial.

7. SAME—*right of entry pending appeal.* Where a railway company appeals to the Supreme Court from the judgment awarding compensation, it will be entitled to an order of the court permitting it to enter upon the property sought to be condemned, on filing its appeal bond in conformity with the order granting the appeal. It is error to refuse such order, but when the company otherwise obtains the order, as, upon the payment of the money into the county treasury, the error will not reverse.

8. Section 13 of the Eminent Domain act gives the petitioner the right to enter upon the use of the property sought, pending an appeal from the assessment of compensation and damages, and section 12 of the act gives the right of appeal. The exercise of one of these rights is not a waiver of the other,—they are concurrent. It matters not that on a reversal and a second trial the buildings which were upon the premises at the time of the first trial may have been removed, and thus prevent a personal view by the jury. A trial may be had without such view.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD TUTHILL, Judge, presiding.

Messrs. WILLIAMS & THOMPSON, for the appellant:

Evidence is admissible of actual sales (and equally, on principle, of actual rentals,) of property of like character, and adjoining or in the same neighborhood, with the property the value of which is in issue. *Cemetery Association* v. *Railroad Co.* 121 Ill. 200; *Watson* v. *Railroad Co.* 57 Wis. 332; *Washburn* v. *Railroad Co.* 59 id. 364; *Benham* v. *Dunbar,* 103 Mass. 365; *Chandler* v. *Aqueduct Co.* 122 id. 305; *Shattuck* v. *Railroad Co.* 6 Allen, 115.

This court has repeatedly said, that possible profits are not a proper element of damages, and should not be taken as a measure of damages from interruption to business. *Railway Co.* v. *Walsh,* 106 Ill. 253; *Dupuis* v. *Railway Co.* 115 id. 101;

10—127 ILL.

*De Buol* v. *Railway Co.* 111 id. 505; *Booker* v. *Railway Co.* 101 id. 333; *Railway Co.* v. *Dresel,* 110 id. 89.

Could the view of the premises by the jury warrant their verdict, which otherwise is not only unsupported by, but in excess of, all the evidence? The court has always been slow in disturbing a verdict when the jury viewed the premises. *Mitchell* v. *Railroad Co.* 85 Ill. 566; *McReynolds* v. *Railway Co.* 106 id. 152; *Railroad Co.* v. *Blake,* 116 id. 163.

The court erred in denying the motion of appellant for an order permitting it to enter upon the use, for railroad purposes, of the estates of appellees, after the approval of the bond herein. *Railway Co.* v. *Phelps,* 125 Ill. 482.

Mr. W. P. Black, for the appellees.

Mr. Justice Wilkin delivered the opinion of the Court:

This is a proceeding by appellant, against appellees, under chapter 47 of our statute, to condemn certain lots on State street, in the city of Chicago, for railroad purposes, on which appellees held leases. On the lots were two buildings, numbered 574 and 578, the first held by Schneider, at a rental of $60 per month, and the other by Hickey, at $110 per month. Both leases expired April 30, 1889. The building occupied by Schneider is a two-story frame, the lower story being used by him for the manufacture and sale of cigars, and the upper one sub-let for a dwelling, at $30 per month. The other building is a three-story brick, with basement. Hickey's lease covered the basement, and first and second stories, in which he kept a saloon. At the time of the hearing, June 14, 1888, these leases had about ten and one-half months to run. The jury having heard the evidence produced by the respective parties, as to the value of these leasehold interests, and having examined the premises, made their report, giving to petitioner the right to take and appropriate the property, and allowing each of said appellees the sum of $1200 "as com-

pensation for their respective leasehold interests," and the sum of $1300 to each "as compensation for inconvenience and cost of removal from the premises." Judgments being entered on this report, appellant prayed an appeal, which was allowed on its filing bond in the sum of $10,000, which bond was duly presented and approved, whereupon appellant moved for an order allowing it to enter upon and use the said premises pending the appeal, but the motion was denied. Appellant then paid the amount of the judgments to the county treasurer, and on presentation of his receipt therefor the court granted the order of entry. A reversal is urged here mainly upon the ground that the verdict of the jury is unauthorized by the facts appearing in the record.

At the instance of appellees, the court instructed the jury as to the measure of compensation, as follows:

"The jury are further instructed, that in determining the amount of compensation to be awarded to the defendants, respectively, in this case, they may properly take into consideration all evidence tending to show the actual value of the leasehold interest to the respective defendants, of which it is proposed to deprive them; the actual loss to be suffered by these defendants, respectively, from the loss, destruction or depreciation of the improvements placed by them in the properties specially adapted to the conduct of their business, if any, shown by their evidence; the reasonable costs of removal and of refitting in other localities for the further conduct of business, as shown by the evidence; and also any injury that the jury may find, from the evidence, will result to said defendants, respectively, by reason of the unavoidable interruption of their business, incident to their removal from their present site, and their establishing in new locations during the period of such interruption, if any, shown by the evidence."

Substantially the same rule was announced in instructions asked by appellant. No controversy can therefore be raised here as to that question, and, accepting it as a fair legal guide

to the jury in fixing the amount which appellees should be paid as just compensation for being deprived of their property, it is impossible to escape the conviction, that the verdict in this case, on which judgments were entered, is the result of prejudice, inadvertence or mistake. In the first place, it must strike the impartial mind as remarkable, that under leases so essentially different as to the property leased, the amounts of rent reserved, and the uses to which the buildings were appropriated, the leasehold interests should be of precisely the same value, and that the cost and inconvenience of removal in such case should be exactly the same. But the evidence, instead of explaining or reconciling this apparent inconsistency, only makes it more glaring, and leaves no doubt that the amounts were arbitrarily fixed by the jury, regardless of the proofs.

Appellant introduced four witnesses as to the value of the leasehold interests, each of whom testified that the rent reserved, viz., $60 in the one case and $110 in the other, was the full rental value of the premises, and that neither was worth more than the said amounts agreed to be paid. Appellees both testified in their own behalf, but neither contradicted appellant's witnesses on that subject, and only one witness introduced by them does so, and he only as to the lease of Hickey, which, he says, in his judgment, is worth $200 per month, or a bonus of $90 per month. Appellant also introduced two witnesses as to the cost of removal. One of these swears that the cost to Schneider to move his fixtures and put them up in another building, replacing what might be necessary with new material, would be $235.40, and to Hickey, $161. The other estimates the cost to Schneider at $263.50, and to Hickey at $148.50. While the evidence of appellees, and witnesses introduced by them, on this element of damages, would justify a finding of much larger sums than those fixed by either of said witnesses, it is impossible to so construe their evidence as to sustain the finding of $1300 reported by

the jury. In fact, by their own testimony, Schneider's expense for furniture and fixing up his establishment was only between $700 and $800, and that of Hickey about $1200, in which last amount he admits is included the cost of his moving into the building, and a pool table, for which he paid $375.

The verdict of the jury is not only contrary to the weight of the testimony, but manifestly against all the evidence, and this is not denied or controverted by counsel for appellees. It seems, however, that it was sustained below, on the theory that the jury might legally base its report as to the amount of compensation to be paid, on their personal examination of the premises, without regard to the testimony of witnesses, and this view is now urged in support of the judgment below, and is thought to be sustained by decisions of this court. While it is true that we have frequently held that the personal examination by the jury in such cases is in the nature of evidence, and is to be considered by them in connection with all other evidence in the case, and that an assessment will not be set aside merely because it may differ in amount from the preponderance of the evidence appearing in the record, it has not been held by this or any other court, so far as we are aware, that all the evidence may be ignored, and the amount fixed directly contrary thereto. In *Mitchell et al.* v. *Illinois and St. Louis Railroad Co.* 85 Ill. 567, it is said : "As to the damages sustained, the evidence is conflicting. Under the statute the jury had a right to view the premises, and draw their own conclusion from such observation, as well as from other testimony offered in the case." In *Chicago and Iowa Railroad Co.* v. *Hopkins et al.* 90 Ill. 323, after stating that the evidence was conflicting, and upon that preserved in the record the inclination might be to hold the assessment too large, but that the jury personally examined the *locus in quo*, it is said : "It is the evident intention of the law, such personal examination by the jury is in the nature of evidence to be considered by them, and to what extent they were influenced

by such examination in their assessment it is impossible to tell. The result of the personal investigation may have been such as to have fully justified the assessment made, even if it was clear the preponderance of the evidence preserved in the record was against so large an amount." In *Green* v. *City of Chicago*, 97 Ill. 373, we said: "Inasmuch as the value of the land taken is purely a question of fact, to be determined by the jury from all the particular circumstances in each case, it is believed no general rule can be laid down applicable alike to all cases. * * * Where, in any case, the different theories and processes submitted by witnesses for ascertaining the value of property taken, lead to widely different results, and the opinions of the witnesses themselves are conflicting and wholly irreconcilable, and there is sufficient evidence upon which the verdict may be sustained, the court ought not to disturb it, unless it is manifest, from all the circumstances in the case, the jury adopted a false theory in arriving at their conclusion, in which event the verdict ought to be set aside." So in *McReynolds et al.* v. *Baltimore and Ohio Railway Co.* 106 Ill. 156, it was again said: "The opinions of witnesses here were extremely conflicting. The jury went upon the premises, and saw for themselves the situation,"—and what was said in *Chicago and Iowa Railroad Co.* v. *Hopkins et al. supra*, is repeated with approval. To the same effect is the language used in *Chicago and Evanston Railroad Co.* v. *Blake*, 116 Ill. 166. While there is language used in the instruction commented upon in *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* which would seem to go further, and authorize the jury to fix the amount independent of the sworn testimony, yet the instruction, taken as a whole, was thought to be in accord with the decisions above referred to, and was approved on their authority.

The oath which the jury is required to take by section 8, as well as the language used in section 9, of the Eminent Domain act, clearly shows that the sworn testimony shall not be disre-

garded in fixing the amount of the assessment, and the rule deducible from all the decisions of this court is, that where there is a conflict of evidence, and the verdict is consistent with all the facts and circumstances in the case, it will not be set aside merely because the court may regard the weight of evidence in the record against it; but when it clearly appears that the amount fixed is wholly inconsistent with and contrary to all the proofs, it is the duty of the court to interfere, and re-submit the case to another jury. In this view of the law it was error to overrule appellant's motion for a new trial. ·

It is also urged as a ground of reversal, that the court below refused to admit evidence of actual rentals derived from similar premises in the near vicinity of those in question. The evidence fails to show that the property inquired about was similar and in the near vicinity to that of appellees. There was therefore no error in refusing the testimony offered.

Both Hickey and Schneider were allowed, over objection by appellant, to state their average monthly profits during the year preceding the hearing, and this is also urged as error. It appears from the record, that this evidence was held competent, as tending to prove, with other testimony, the loss which would be incurred by the suspension of business during the time necessarily consumed in moving, and, thus limited, we see no objection to it.

The case of *Chicago, Santa Fe and California Railway Co.* v. *Phelps*, 125 Ill. 482, is decisive of the right of appellant to an order permitting it to enter upon the premises sought to be condemned, on filing its appeal bond in conformity with the order granting an appeal, and the court below erred in refusing to make it; but as the same purpose was accomplished by paying the money to the county treasurer, the judgment would not be reversed for that error.

Counsel for appellees maintains, that by actually taking possession of the buildings in question, and especially by a removal of one of them and permitting the other to stand vacant

· and fall into ruin, appellant has put it out of the power of the court to grant a view of the premises as they were when occupied by appellees, and therefore another trial can not be had, as contemplated by the statute, and appellant should for that reason be held to have waived its right to insist upon a reversal and new trial.   Assuming that the facts exist as stated, (of which there is no proof in the record,) and that the question is fairly before us for decision, we have no hesitancy in holding the position untenable.   Section 13 of the act, as construed in *Chicago, Santa Fe and California Railway Co.* v. *Phelps, supra,* gives appellant *"the right to enter upon the use of the property"* pending the appeal.   Section 12 of the same act gives the right of appeal.   The position of counsel amounts to saying, that the exercise of one of these rights is a waiver of the other, whereas, by the very terms of the statute, they are concurrent.   A personal examination of premises to be condemned, by the jury, may be desirable in most cases, but is not essential to a trial, under the statute.

An attempt is made to justify the amounts found by the jury by assuming that something was allowed to each of appellants for the good will of their business.   It is a sufficient answer to this position to say, that all evidence on that subject offered by appellees was excluded by the court below.   Besides, the report of the jury shows that no such allowance was made.

There is no view of this record that we have been able to discover, which will justify an affirmance of the judgment below.   It is clear that the sum of $2500 to each of appellees, for the unexpired term of their leases, and cost and inconvenience of moving, is unreasonable, and unauthorized by the proof,—is largely in excess of just compensation.   The judgment of the circuit court will therefore be reversed, and the cause remanded for further proceedings.

*Judgment reversed.*