CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Petitioner-Appellant and Cross-Appellee, *v.* ELIZABETH K. GIBBEL *et al.*, Respondents.—(ROBERT P. FELBER *et al.*, Respondents-Appellees and Cross-Appellants.)

Fourth District No. 14923

Opinion filed November 8, 1978.—Rehearing denied December 12, 1978.

Nafziger & Otten and Duane L. Traynor, both of Springfield (Gary A. Brown, of counsel), for appellant.

Giffin, Winning, Lindner, Newkirk, Cohen and Bodewes, of Springfield (Grady E. Holley, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Condemnation.

*Replacement* cost used.

Error.

Reversed and remanded.

Central Illinois Public Service Company (CIPS) filed a condemnation petition requesting a right-of-way over respondents' land in order to install power lines. At trial, the two principal witnesses were appraiser Wayne Briggs for the petitioner CIPS and appraiser Edward Collins for the respondents (Felber). The witnesses made appraisals of the Felber property as to three different aspects: (1) value of land actually taken; (2) damage to the part of the easement not occupied by structures; and (3) damage to property outside the easement strip. The major disagreement between the appraisers centered on the third category, damage to property outside the easement strip. Briggs testified there would be no damage, whereas Collins testified there would be damage in the amount of $19,985. The jury was obviously more impressed with Collins' appraisal since it returned a verdict of $17,500 in order to compensate respondents for damage to their property outside the easement strip.

On appeal, CIPS criticizes Collins' testimony in two respects: (1) that Collins' appraisal was improper since his calculation for the total value of the property was based (in part) on the replacement value of the Felber home; and (2) that sales of dissimilar property were improperly introduced into evidence during Collins' testimony. We agree with CIPS on the first issue and therefore reverse and remand for a new trial.

## APPEALABILITY

Before the merits of the first issue can be examined, we must initially decide whether the issue has been properly preserved for appeal. CIPS did not object to Collins' valuation until the end of his testimony when the following exchange occurred:

> "MR. TRAYNOR [attorney for CIPS]: At this time I would move to strike all the testimony of this witness as his valuations are not based upon proper elements and if the Court would like to hear—
>
> THE COURT: Motion will be denied."

■■ First of all, we note that the objection is sufficiently specific to apprise the trial court of defendant's objection and any lack of specificity can be excused by the trial court's interruption in the middle of CIPS's objection, thereby preventing a further explanation. Furthermore, we find that the objection was timely. Collins' direct testimony, although very difficult to follow, does include a description of the Felber house but does not specifically mention its value or how he computed its value

except to say that he needed the square footage of the house in order to compute its replacement value. Collins does not place a value on the house during his direct examination. Thus, CIPS did not have a clear opportunity to object to Collins' use of the replacement value of the house in his valuation of the Felber property. A motion to strike evidence is timely when the character of the objectionable testimony is apparent or as soon as it becomes apparent. (*Louis L. Weinzelbaum, Inc. v. Abbell* (1964), 49 Ill. App. 2d 442, 200 N.E.2d 43.) Thus, since the objectionable character of Collins' testimony was not clear until late in his testimony, the motion to strike was timely and we will address the issue on the merits.

## I

■■■ Turning to the substantive aspects of the issue, it is clearly the law in Illinois that the replacement value of buildings cannot be added to the value of the land in order to adduce the total value of the property. Instead, the improved land must be valued as a whole. (*Department of Public Works & Buildings v. Lotta* (1963), 27 Ill. 2d 455, 189 N.E.2d 238.) The reason for this rule is that valuation in an eminent domain proceeding must be that amount of money which a purchaser, willing—but not obligated—to buy the property, would pay to an owner, willing—but not obligated—to sell in a voluntary sale. (Ill. Rev. Stat. 1975, ch. 47, par. 9.7.) A willing buyer may not consider that a house is an asset and, in fact (depending upon what the buyer may desire the land for), may consider it a detriment—or at least may consider that it is not in the proper location in regard to the remainder of the property. In any event, the replacement value of a house does not necessarily reflect its value in relation to land as a whole. See *Lotta*.

■■ In the instant case, Collins prepared a written appraisal (petitioner's exhibit No. 9) in which he detailed his calculations in arriving at his total value for the property before and after CIPS installed its power lines. That appraisal (which was obviously the basis of Collins' testimony at trial) specifically states that he considered the *"replacement"* cost of the house at $62,000. Collins added the $62,000 figure to the value of the ground in arriving at a total value for the property. This was clearly an improper method of valuation. Furthermore, such error cannot be discounted as harmless since if Collins had properly valued the home in relation to the land as a whole, he may have decided that the home was worth considerably less than $62,000 and that the damage to the home was proportionately decreased. A reduction in the damage figure to the home would result in a corresponding decrease in the amount of damage to property outside the easement strip.

Respondents, however, contend that Collins' testimony during cross-examination refutes the idea that Collins merely considered the

replacement value of the home. Collins stated that he had reached the total sum by considering the property as a whole. Although Collins spoke the magic words "as a whole," there is no indication in the record that he actually valued the property as a whole or—as plaintiffs suggest—used the replacement value merely as a back-check. Rather, his written appraisal and testimony at trial demonstrate that his sole method of valuation was the addition of the *replacement* cost of the house to the land. (See *Department of Transportation v. Quincy Coach House, Inc.* (1976), 64 Ill. 2d 350, 356 N.E.2d 13.) This valuation technique was improper and since the jury was obviously influenced by Collins' testimony, the case must be reversed and remanded for a new trial.

However, the improper valuation by Collins only pertained to damage to land outside the easement. Therefore, we affirm the jury's determination as to the value of land actually taken and as to the damage to the part of the easement not occupied by structures. We remand for a new trial only on that part of the jury's verdict which dealt with damage to property outside the easement strip.

## II

As to their second argument, CIPS alleges that the trial court erred when it allowed petitioner's appraiser, Collins, to testify that a lot on a nearby developed lake sold for $41,500. CIPS contends that the lake lot was "dissimilar property" and therefore not relevant to the jury's valuation of the Felber property.

■ Land need not be identical for comparison, but it must be similar, meaning having a resemblance, and property may be similar for purposes of fruitful comparison, though each possesses various points of difference. (*Department of Public Works & Buildings v. Seeber* (1968), 93 Ill. App. 2d 271, 235 N.E.2d 269.) However, it has been consistently held that property which has been subdivided into lots is not similar to an unsubdivided or acreage property. *City of Chicago v. Pridmore* (1957), 12 Ill. 2d 447, 147 N.E.2d 54.

Thus, it would be error to allow the respondents to introduce evidence concerning the sale for $41,500 of a lot located on a developed lake. Collins' testimony, however, is so muddled and confusing on this point that it is unclear what kind of land he is talking about and what sort of price he is quoting. In fact, the trial court sustained an objection to any quotation of a sales price. All that can reasonably be discerned from Collins' testimony is that there is similar property in the area of the Felber property that sold for $110,000 in the last year. That fact was brought out on cross-examination by CIPS and therefore no damage was done by respondents' redirect examination. On remand, the trial court should once

again exercise precaution in this area and not allow sales of dissimilar property to be introduced into evidence.

### III

The Felbers have filed a cross-appeal in this case arguing that CIPS should not have been allowed to come upon their land during the pendency of this appeal and begin constructing their power lines. Specifically, they argue that section 13 of the Eminent Domain Act (Ill. Rev. Stat. 1975, ch. 47, par. 13) was not meant to cover the situation where the petitioner-condemnor has initiated and prosecuted the appeal, but rather, applies to the situation where the respondent-condemnee has perfected an appeal and the petitioner wants use of the land while the appeal is being prosecuted. In the alternative, respondents contend that if the statute does, in fact, pertain to the situation where the petitioner appeals, then the statute is unconstitutional since it sanctions the taking of private property for public use without just compensation in violation of section 15, article 1, of the 1970 Illinois Constitution.

Illinois courts have held that section 13 of the Eminent Domain Act does apply to cases where the condemnor has initiated and prosecuted the appeal. (*Davis v. Northwestern Elevated R.R. Co.* (1897), 170 Ill. 595, 48 N.E. 1058; *Atchison, Topeka & Santa Fe R.R. Co. v. Schneider* (1889), 127 Ill. 144, 20 N.E. 41; and *Chicago, Santa Fe & California Ry. Co. v. Phelps* (1888), 125 Ill. 482, 17 N.E. 769.) Illinois courts have also held that section 13 is constitutional. *Davis.*

■■ Respondents, however, asked this court to examine the statute in modern times and under a new constitution. We fail to discern how a new constitution alters our decision since section 13, article 2, of the 1870 Illinois Constitution (guaranteeing that private property should not be taken or damaged for public use without just compensation) is substantially the same as section 15, article 1, of the 1970 Illinois Constitution.

The basic thrust of respondents' argument is its contention that a bond is not "just compensation," especially since the condemnor might yet abandon the condemnation suit even after power lines and equipment have been placed on petitioner's land. However, the potency of this argument has been substantially diluted by the Supreme Court of Illinois in *Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 150 N.E.2d 124, where the court stated that the constitution does not prohibit the taking of possession and use of private property by the State prior to the fixing and payment of compensation, provided, of course, that the authorizing statute adequately safeguards the owner of such property.

Here, common sense dictates that a sufficient bond will adequately safeguard the condemnee in this proceeding if CIPS abandons the action and there is damage to the Felber property. Accordingly, respondents' contention is without merit.

Affirmed in part; reversed in part and remanded.

TRAPP and CRAVEN, JJ., concur.