CHRIST MATICH *et al.*, Plaintiffs-Appellees and Cross-Appellants, v.
ROBERT GERDES, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—89—0405

Opinion filed February 1, 1990.

McCULLOUGH, J., dissenting.

Peter W. Brandt, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellant.

John G. Satter, of Satter, Ewing, Beyer & Spires, of Pontiac, for appellee Economy Fire & Casualty Company.

Fellheimer, Travers, Luckman & Engelman, Ltd., of Pontiac (Robert M. Travers, of counsel), for appellees Christ Matich and Joyce Matich.

JUSTICE GREEN delivered the opinion of the court:

This appeal turns upon the proper measure of damages for the owners of a barn destroyed by a fire negligently caused by a tortfeasor. The barn lay on a 1.6-acre tract. It was very old but had been restored and decorated by the plaintiff owners after they purchased the tract in 1972. The predominate use of the barn was for the personal pleasure of the owners and their family and it had some but not great agricultural use. The precise question to be decided is whether the measure of damages is the cost of restoration minus depreciation, or the diminution in the actual fair cash market value of the tract re-

sulting from the destruction of the building. We conclude that under the facts here, the cost of rebuilding minus depreciation is the correct measure of damages.

The plaintiffs in this case are Christ Matich and Joyce Matich, owners of the described 1.6-acre tract. The defendant is Robert Gerdes. On June 9, 1986, plaintiffs brought suit in the circuit court of Livingston County to recover damages for the destruction of their barn and contents resulting from a fire on September 19, 1985. The defendant was charged with negligence, and he does not dispute the sufficiency of the evidence to prove that negligence and to prove it was a proximate cause of plaintiffs' loss. Upon petition, Economy Fire and Casualty Company, a corporation (Economy), was permitted to intervene as a plaintiff subrogee of the Matiches to the extent of $51,843.06. Economy had paid that amount to the Matiches pursuant to a policy of fire and extended coverage insurance Economy had issued to Matiches. On February 2, 1989, after a bench trial, the court found in favor of plaintiffs and entered a judgment in favor of the Matiches in the sum of $74,464.53, with Economy being subrogated to the extent of $51,843.06.

After the foregoing judgment was entered, a series of post-trial motions were filed by the parties. On March 6, 1989, defendant filed a post-trial motion attacking the judgment against him for damages. On March 8, 1989, Economy filed a motion for attorney fees and costs. Then, on March 21, 1989, the Matiches filed a similar motion. On April 6, 1989, Economy filed a motion for prejudgment interest. The circuit court denied all of these motions by an order entered on April 18, 1989. Defendant has appealed, contending the circuit court applied an improper measure of damages in making its award and erred in ruling upon evidence. Economy and the Matiches have cross-appealed the denial of their requests for attorney fees, costs and prejudgment interest. Taken with the case is a motion by defendant to dismiss the cross-appeals for lack of jurisdiction. We deny that motion and affirm the circuit court in all respects.

We consider first the propriety of the judgment against the defendant for damages. The award included not only the loss of the barn, but also the loss of the contents, other items damaged in the fire, and services reasonably required as a result of the fire. The award for damage to the barn was in the amount of $38,858. Little dispute exists as to the $35,606.53 awarded for other losses, which resulted from services reasonably required as a result of the fire and loss of and damages to personal property. Other than challenging some evidentiary rulings, defendant makes no challenges of substance

as to the award of these damages.

At trial, both the Matiches testified the barn was in excellent condition at the time of the fire. Joyce Matich described the barn as being "like new." Christ Matich estimated the barn would last for 40 or 50 years. The evidence concerning the restoration of the barn accomplished by the Matiches after purchasing the property included rewiring, restoring outside fixtures, replacing wood siding, replacing broken windows, painting, reroofing, adding a layer of concrete to the floor, new support beams and posts, and building new animal stalls. The Matiches' son testified he was able to play basketball in a 30- foot by 20-foot area of the loft where the ceiling was at least 25 feet high. He also testified to using the barn for his Future Farmers of America hog project and his projects for a nearby local fair. A defense witness described the prefire condition of the barn as fair to good.

While the trial court indicated, at the time of rendering its decision, it took virtually all of the evidence received into consideration in making its decision, the result indicated it relied heavily on the testimony of plaintiffs' expert, Andrew Brorsen. Brorsen considered the life-style of the plaintiffs, photographs of the barn, the quality of work they had done in repairing their home, and the cost of the building replacing the barn. He rejected use of the income approach and the comparable-sales approach in valuing the barn. He indicated he was unable to find suitable comparable-sale values. Rather, he based his determination upon the cost of reproduction less depreciation. He based the reproduction cost largely upon the cost of a replacement building, adjusted because the replacement did not have all of the features of the destroyed barn. He determined the depreciation to be 15% and stated his opinion the barn had a value of $43,108.60 at the time of the fire.

Defendant relies primarily upon the testimony of his expert, Arthur Korte, who testified to an opinion of damages based in part upon the diminution in the actual fair market value of the 1.6-acre tract because of the loss of the barn. Based upon sales of two tracts he deemed comparable in the Bloomington area, and considering the higher price there than near Chatsworth, he concluded the Matich tract had an actual fair cash market value of $45,000 to $60,000 prior to the fire and that the loss of the barn reduced the value by less than $5,000. Nevertheless, he testified to an actual fair cash market value of $10,000 for the barn.

The supervisor of assessments of Livingston County was called by the Matiches. On direct examination, he testified concerning the characteristics of the Matiches' 1.6-acre tract. On cross-examination and

redirect examination, he testified (1) the tract had been classified as residential, and the barn had been given an assessed valuation which, when multiplied by three to give full value would be $840; and (2) he would estimate the new structure replacing the barn on the premises could be built for $8,200. Whatever improprieties resulted from this testimony were not prejudicial to defendant. The claims adjuster for Economy was called as an "adverse witness" by defendant and testified that Economy had paid the policy limit of $25,000 for the barn.

■ A good summary of Illinois cases in regard to the measure of damages for injury to real property is contained in *Williams-Bowman Rubber Co. v. Industrial Maintenance, Welding & Machining Co.* (N.D. Ill. 1987), 677 F. Supp. 539. That court related an uncertain history on that issue. However, that court concluded the later cases followed a rule that the measure is the diminution in market value of the real estate, except when the damages are only partial and repairs are reasonably priced. The court concluded that under those circumstances, the cost of repairs was deemed to be the appropriate remedy. The diminution in value of the real estate was held to be the measure of damages where a barn was totally destroyed in *Johnson v. Pagel Clikeman Co.* (1951), 343 Ill. App. 346, 99 N.E.2d 148.

We agree the foregoing sets forth the general rule in regard to damages to realty. However, in *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 403 N.E.2d 316, this court recognized that the question of whether the property injured was being used for financial gain or for personal use was very significant. There, a road contractor, through negligent mistake, had dumped a large quantity of broken concrete on a 20-acre tract which contained a dwelling. The evidence indicated the cost of removal of the concrete would be $12,000, while the diminution in value because of the presence of the concrete would only be $2,000. Nevertheless, we upheld the trial court's determination that the cost of repairs was the correct measure. This court noted that similar rulings had been made in *Zosky v. Couri* (1979), 77 Ill. App. 3d 1033, 397 N.E.2d 170 (tire ruts on residential lawn), and *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560, 367 N.E.2d 580 (blasting actions destroying a residential well on property where the owner had lived for 30 years).

■ In *Jones v. Consolidation Coal Co.* (1988), 174 Ill. App. 3d 38, 528 N.E.2d 33, the appellate court held the cost of repairs was the appropriate measure of damages for the cracking of a concrete floor in a residential garage as a result of flooding. That court cited section 929(1)(a) of the Restatement of Torts (Second) in support of its ruling. That provision states:

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and *not amounting to a total destruction of value*, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, *or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred.*" (Emphasis added.) Restatement (Second) of Torts §929, at 544 (1979).

As the italicized portion of section 929 of the Restatement (Second) of Torts indicates, the rule announced there concerning the use of cost of repair when the cost exceeds the diminution in market value has been applied primarily when the property tortiously damaged has not been totally destroyed. Such was the case in *Jones, Myers*, and *Zosky*. However, in *Arras*, a well was made totally useless. Plaintiffs suggest we should treat the situation here in such a way that the property involved be considered to be the entire 1.6-acre tract with all of its improvements. Under this analysis, the total instrumentality would be only partially damaged. Such an analysis would be consistent with the diminution-in-market-value method of appraisal, where consideration is given to the actual fair cash market value *of the whole tract* before and after the infliction of damage.

We need not decide whether the analysis whereby total loss of the barn would be considered only partial damage to the tract should be applied. We deem the essence of *Jones* and the court's decision in *Myers* to be that when the damaged property gains its principal value from personal use, rather than that for pecuniary gain, the loss in market value is a poor gauge of damage. When the property is used in the special personal way involved there and here, a criterion based logically on reproduction cost should be used when that can reasonably be done. In writing for the court in *Jones*, Justice Lewis stated:

"While we appreciate the court's reluctance to sanction an excessive cost of repair award which might result in economic waste *in a commercial setting*, we are not convinced that an *injured homeowner* should be relegated to a diminution in value standard where his structures are damaged." (Emphasis added.) *Jones*, 174 Ill. App. 3d at 45, 528 N.E.2d at 38.

Similarly, in writing for this court in *Myers*, Justice Mills stated:

"Allowing a plaintiff to recover the lesser of the cost of repair or the diminution in market value may be appropriate where the interest which has been harmed is purely financial, as where the land was purchased as a business investment with an eye towards speculation or where it is held solely for the pro-

duction of income. However, the same measure of damages may be painfully inadequate when the land is held for a personal use such as a family residence and the harm may be corrected with a reasonable expenditure even though the expenditure exceeds the amount the land has diminished in value. In the latter case, the full repair cost will come much closer to restoring what was actually lost and will not require the injured party to correct the harm with funds from his own pocket." (*Myers*, 83 Ill. App. 3d at 7, 403 N.E.2d at 321.)

The trial court found the foregoing language to be persuasive.

We also note, as did the *Jones* court, that the comments to section 929 of the Restatement (Second) of Torts state in part:

"[I]f a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion." (Restatement (Second) of Torts §929, comment *b*, at 546 (1979).)

Under the evidence here of the life-style of the Matiches, their use of the barn, and their reason for refurbishing the barn upon their purchase of the property, we consider the barn here to be analogous to the vegetable garden in the Restatement hypothetical. In each case, the property injured was used for some material gain, but this would be subserviant to the owner's use for enjoyment.

In holding that the reproduction-cost-minus-depreciation method of loss evaluation here was appropriate, we were impressed by a certain aspect of the testimony of the appraisal witness Korte. He testified the diminution in actual fair cash market value of the premises as a result of the fire destroying the barn was less than $5,000, yet he deemed the "value of the barn" to be $10,000. This testimony gives the impression of an admission that the diminution-in-value-of-the tract method of determining damages here is a totally inadequate way of compensating the plaintiffs for the loss resulting from the fire. The $10,000 figure was one which was not based upon any objective standard, because it involved a nonexistent hypothetical situation of a barn unrelated to the land to which it was attached. The testimony gives the impression of a good-faith attempt to be fair without a method of calculation to support the conclusion.

We recognize the possibility of the abuse of use of a reproduction-

cost-based determination in situations where an object is totally destroyed. However, we do not see how the dangers of abuse are greater then than when a standard of cost of repair is used and the object is only partially destroyed. If the diminution in value theory is always used when the damages amount to a total loss (*Johnson*, 343 Ill. App. 346, 99 N.E.2d 148), then frequently, the owner of property 90% destroyed would be entitled to greater damages than would be the case if the property were totally destroyed. The situation would be analogous to that in the days when severe limits were placed upon awards for wrongful death. A tortfeasor who killed an injured party was in less financial jeopardy than if the other parties' injuries were nonfatal.

We hold the reproduction cost minus depreciation was the proper measure of damages here. The court applied that theory, and any deviation therefrom was not prejudicial to defendant.

We find no error in the circuit court's evidentiary findings. The defendant made only a general objection to Joyce Matich's valuation testimony concerning a wine press lost in the fire. Such an objection goes only to relevancy and materiality. (*Gale v. Hoekstra* (1978), 59 Ill. App. 3d 400, 375 N.E.2d 456.) In any event, an owner may testify as to the value of his or her own personalty. The defense could not have been prejudiced by any testimony by Ron Sanders as to the replacement cost of a barn upon which bids were taken but which was never erected. No plaintiffs' expert used those figures as a basis for an opinion as to value, and the record does not indicate the court gave the testimony any consideration.

Defendant contended the testimony of plaintiffs' witness, the supervisor of assessments for Livingston County, that the assessed valuation of the barn when adjusted to full value was $840 and that his estimate of the cost of replacement of the new structure was $8,200, were judicial admissions binding on plaintiffs. Defendant maintains the court erred in denying his motion to require plaintiffs to accept his tender of a check for $840 in full satisfaction of the loss of the barn. He also asserts the court erred in not entering judgment on the damages to the barn in the sum of $8,200. Regardless of other weakness in defendant's contentions, we deem it sufficient to point out that even if the testimony of the supervisor of assessments had been that of a plaintiff, the answers given would not constitute an unequivocal determination on the points involved and, thus, would not be judicial admissions of a party. *McCormack v. Haan* (1960), 20 Ill. 2d 75, 169 N.E.2d 239; see M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.12, at 543-44 (4th ed. 1984).

■ Defendant argues the trial court erred in allowing, over defense objection as to relevancy, testimony by Brorsen concerning the basic cost to rebuild a replica of the lost barn. Plaintiffs maintain the testimony was admissible to explain the basis of his opinion. We agree. (*Lovelace v. Four Lakes Development Co.* (1988), 170 Ill. App. 3d 378, 523 N.E.2d 1335.) The same was true in regard to testimony of Brorsen concerning some allocation of the estimated costs of a replica being modernization costs. The court was not in error in later refusing to strike Brorsen's testimony. Not only was the testimony admissible for the reasons stated, the defense motion was also untimely as the motion was not made until after the witness was excused and had left. *Central Illinois Public Service Co. v. Gibbel* (1978), 65 Ill. App. 3d 890, 382 N.E.2d 846.

■ Defendant points out that testimony of the Matiches in regard to expenditures for the construction of the new structure was not supported by written documents and maintains the testimony of the Matiches made clear they did not know the costs involved. However, the testimony of Christ Matich indicates he did most of the purchasing of those products. Under the circumstances, we conclude the weakness in the evidence went to its weight rather than its admissibility.

■ We find no reversible error in the admission of various items of evidence offered by plaintiffs. We look with concern upon the court's admission of certain newspaper articles describing the work done on the barn by plaintiffs prior to the fire. As the case was tried at bench, and the information in the articles was used by Brorsen in determining value of the barn and was corroborated by other testimony, we do not find any error to be reversible. A letter from defendant's liability insurer indicating defendant was responsible for the fire was admitted into evidence. Defendant now claims it was error. However, defendant did not object when the letter was first admitted, and in any event, the liability was not disputed. No error resulted. Income tax returns of the Matiches were admitted over defense objection of relevancy. They were offered to show that the Matiches had enough income to make the repairs. The relevancy was very questionable, but in view of the trial being at bench, we find no reversible error involved. On appeal, defendant raises questions of lack of foundation and hearsay, but those objections were waived by not raising them at the time the evidence was offered.

■ Defendant complains on appeal of admission of a photograph of the Matiches' house alone and of plaintiffs' exhibit No. 3. No objection was made as to the admission of the photograph of the

house or plaintiffs' exhibit No. 3. Defendant also complains of the admission of exhibits concerning the testimony of witnesses Sander and Knake, but the record does not indicate any objection was made as to this testimony. Defendant further maintains the court should have found for defendant at the close of plaintiffs' evidence, because plaintiffs did not prove a fair market value for the property and presented only speculative evidence. We have previously decided plaintiffs presented sufficient proper evidence to prove damages.

We conclude no error or combination of errors requires reversal of the damages awarded.

The motions of plaintiffs for attorney fees and costs are based upon section 2—611 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), which provides sanctions for the filing in bad faith of pleadings, motions or other paper. The motion for prejudgment interest is based upon the same alleged conduct of the defendant. Defendant asserts the cross-appeals filed by the Matiches on March 24, 1989, and by Economy on May 26, 1989, fail to give us jurisdiction of the cross-appeals because the cross-appeals are based upon post-trial motions which were filed more than 30 days after the final judgment in the case in chief entered on February 2, 1989.

Determination of the motion to dismiss the cross-appeals requires consideration of section 2—1203(a) of the Code and Supreme Court Rules 303(a)(1), (a)(3). Section 2—1203(a) states:

"In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment *or for other relief.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203(a).)

Supreme Court Rule 303(a)(1) states:

"Except as provided in paragraph (b) below, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, *within 30 days after the entry of the order disposing of the last pending post-trial motion.*" (Emphasis added.) 107 Ill. 2d R. 303(a)(1).

The parties do not dispute that absent aspects of revestment not argued here, a circuit court loses jurisdiction to entertain a post-trial motion filed more than 30 days after the entry of a judgment disposing of all issues in the case, and under circumstances where no

post-trial motions have been filed in that 30-day period. (*Putz v. Schulte* (1982), 104 Ill. App. 3d 128, 432 N.E.2d 1070.) That same rule was applied by the Appellate Court for the Second District in regard to a motion filed under section 2—611 of the Code more than 30 days after the final judgment disposing of all of the pending issues in the case and when no other post-trial motion had been filed in the 30-day period. (*Herman v. Fitzgerald* (1989), 178 Ill. App. 3d 865, 533 N.E.2d 1144.) However, in *Center Bank—Glen Ellyn v. Kauth* (1986), 142 Ill. App. 3d 189, 491 N.E.2d 819, that same appellate court had reversed a circuit court order which had dismissed a petition filed pursuant to section 2—611 of the Code. The motion for attorney fees had been filed after a final order quashing a writ of attachment and concerned conduct involved in that proceeding. However, the underlying suit seeking judgment on two notes was still pending. The appellate court concluded that the continuing jurisdiction of the circuit court beyond the 30-day period enabled the court to have jurisdiction to entertain the section 2—611 petition.

The *Herman* court recognized the difference between the situation there, where no pending matters were before the trial court in the 30-day period from final judgment, and the situation in *Kauth*, where jurisdiction remained. The *Kauth* court noted that in *Sarelas v. Law Bulletin Publishing Co.* (1969), 115 Ill. App. 2d 205, 253 N.E.2d 168, the pendency of a timely filed post-trial motion enabled a trial court to retain jurisdiction to consider a similar petition for attorney fees filed more than 30 days after the entry of a final judgment in the case. As the *Herman* court expressly limited the application of its ruling to situations where the circuit court's jurisdiction was not extended by pending post-trial motions, no case has been called to our attention which directly holds that petitions under section 2—611 of the Code cannot properly be filed in the circuit court more than 30 days after entry of a judgment final as to all issues in a case, where timely post-trial motions were pending.

As the first aspect of the section 2—611 issue we are considering is the motion to dismiss plaintiffs' cross-appeals, another aspect of *Herman* is significant. There, even though the circuit court did not have jurisdiction to rule on the section 2—611 petition, the appellate court did not dismiss the appeal from the order dismissing the motion. Rather, the appellate court took the appeal and affirmed. Here, even if we should conclude the circuit court did not have jurisdiction to rule on the section 2—611 petition, the better practice would seem to be for us to accept the appeal and then rule as to whether the order ruling upon the petition should have been to dismiss the motion

for lack of jurisdiction rather than, as here, for lack of merit. We need not answer that question here, because we hold the motions were timely filed.

■■■ Both *Sarelas* and *Kauth* permit the filing of section 2—611 motions as long as the circuit court still has jurisdiction of the underlying cases. That jurisdiction exists beyond the 30-day time from final judgment as long as at least one post-trial motion filed within the 30-day period is pending. (*Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191; *Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 537 N.E.2d 1332; *Minfield v. Bernardi* (1984), 122 Ill. App. 3d 97, 460 N.E.2d 766.) In contending the court lacked jurisdiction here to consider the motions of the Matiches and Economy because their motions were not filed within 30 days of the judgment awarding damages to the plaintiffs, defendant relies upon the decision of this court in the case of *In re Marriage of Uphoff* (1982), 110 Ill. App. 3d 608, 442 N.E.2d 965. We hold that decision does not control here. In *Uphoff*, a final judgment of dissolution was entered on January 4, 1982. On January 22, 1982, within 30 days of that judgment, the ex-husband filed a post-trial motion. Thereafter, on February 5, 1982, more than 30 days after the final judgment, the ex-wife filed a post-trial motion. Both motions were denied on March 26, 1982. On April 22, 1982, both parties filed notice of appeal. In a split decision, this court dismissed the ex-wife's appeal, holding it was based upon an untimely post-trial motion. This court considered the wording of then applicable section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.3), which by the time of the appeal had become section 2—1203 of the Code. The court deemed that wording, which is the same as that pertaining here, to limit the court's jurisdiction to ruling on post-trial motions filed within the 30-day period from final judgment. No consideration was given to the holding in *Freeman* and its progeny, which hold that the court retains jurisdiction to modify its previous final order as long as some post-trial motion is pending.

■■■ Every appellate decision called to our attention passing upon the timeliness of motions under section 2—611 of the Code has ruled that the timeliness of such a motion filed after a judgment in the proceedings has based its decision on whether the court had retained some jurisdiction of the underlying cause at the time of the court's ruling. The decision in *Freeman* and cases following it hold the court retains some jurisdiction during the pendency of a timely filed post-trial motion. Here, unlike in *Uphoff* and in regard to most post-trial motions, the subject of the motion is not for reconsideration of a past

ruling, but to make an original determination an issue. Thus, the problem of continued requests for reconsideration is not involved. Because of the differences, our decision here does not necessarily overrule *Uphoff*, but we hold that under the circumstances here, the section 2—611 motions were timely filed.

■■ Accordingly, we consider the merits of the section 2—611 motions. Their thrust is that defendant denied liability for the barn in his answer and in answer to an interrogatory while, at the time, he or his counsel had possession of a letter from an adjuster for defendant's liability carrier indicating defendant had no defense. However, defendant did stipulate to facts which easily established his liability. A circuit court's denial of section 2—611 sanctions will not be disturbed absent an abuse of discretion. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77-78, 535 N.E.2d 876, 888; *Dyer v. Zoning Board of Appeals* (1989), 179 Ill. App. 3d 294, 302, 534 N.E.2d 506, 512.) No such breach of discretion was shown here.

■■ The request for prejudgment interest was brought pursuant to section 2 of "An Act in relation to the rate of interest and other charges in connection with sales on credit and the lending of money" (Ill. Rev. Stat. 1987, ch. 17, par. 6402). Plaintiffs here would not be creditors until a judgment was issued as the action was brought in tort. No indication has been given that the statute is intended to provide for prejudgment interest in tort cases. The circuit court properly denied prejudgment interest.

For the reasons stated, we deny the motion to dismiss the cross-appeals and affirm each and every judgment of the circuit court.

Motion to dismiss denied, judgment affirmed.

KNECHT, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:

The testimony shows that in 1972 the plaintiffs purchased 1.6 acres for $11,000. Improvements on the property consisted of a house, a barn, a chicken house, and a garage. Plaintiffs testified repairs made to the house and to the barn, including approximate costs of the electrical work, paint, shingles, support beams and concrete. The plaintiffs did not have any receipts for the materials that went into the repairs, and the testimony was made only upon a reasonable estimate as to the costs. No evidence was presented by plaintiffs concerning the value of the 1.6 acres with the improvements thereon at the time of the fire and after the loss. We are dealing with a total loss

of the barn and the law with respect to this matter, although not clear, would indicate that the measure of damages for that loss is the fair market value immediately before the loss and the fair market value after the loss. As indicated by the evidence and agreed to by the parties, the building burned to the ground, damaged beyond repair, and had no salvage value. *Jones, Myers,* and *Zosky,* does not deal with instances where a building was totally destroyed; the properties had been tortiously damaged and could be repaired.

Contrary to the majority's opinion, *Myers* is not a persuasive case to justify the recovery granted to the plaintiffs in this case. Myers involved concrete being placed upon the premises. It did not involve a destruction or loss of any building thereon. Granting restoration of the premise's damages to the plaintiffs in *Myers* does not require this court, where the barn was a total loss, to permit replacement damages. Here, the barn, a structure separate from the other improvements on the property, cannot be repaired but must be reproduced.

In *Johnson v. Pagel Clikeman Co.* (1951), 343 Ill. App. 346, 99 N.E.2d 148, which involved the total destruction of a barn by a fire, the appellate court of the Fifth District correctly stated:

> " 'We are of the opinion the proper measure of damages in the instant case is the difference in market value of the property before and after the fire.' " (*Johnson,* 343 Ill. App. at 349, 99 N.E.2d at 150, quoting *Clark v. Public Service Co.* (1934), 278 Ill. App. 426, 446.)

I respectfully disagree that granting to the plaintiffs the full cost of reproducing the barn sets the proper amount of damages to be recovered by the plaintiff.

The damages should be determined based on the fair market value of the property before and after the loss. The trial court did not apply the proper standard in determining damages, and the judgment should be reversed and remanded for a new trial on damages.