NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued January 18, 2012
Decided August 21, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-1219

| | |
|---|---|
| ROCKIES EXPRESS PIPELINE, LLC, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 08 CV 3127 |
| | |
| ROBERT J. BURTLE, et al, | Richard Mills, *Judge*. |
| *Defendants-Appellants*. | |

**O R D E R**

Through condemnation proceedings in federal district court, Rockies Express Pipeline ("REX") acquired the rights-of-way for an underground natural gas pipeline across central Illinois. When the owners of four particular tracts of land impacted by the easements contested the amount of just compensation owed to them by REX, the district court directed the parties to submit evidence on the issue. REX and the landowners each presented their own expert witness, both of whom testified and prepared written reports about the values of the properties affected by the easements. The district court excluded the testimony and reports of the landowners' expert on the ground that the evidence was unreliable under Federal Rule of Evidence 702. The district court then granted REX's motion for summary judgment, determining the compensation owed to the landowners based on the values offered by REX's

expert.  The landowners appealed.  Because the district court did not abuse its discretion in excluding the testimony of the landowners' expert, we AFFIRM.

I.

REX is a natural gas pipeline company and is constructing a pipeline through Missouri, Illinois, Indiana, and Ohio.  Under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, REX has been authorized by the Federal Energy Regulatory Commission to obtain land and rights-of-way either by contract or by eminent domain.  *See* 15 U.S.C. § 717f(h).

In June 2008, REX filed a complaint in federal district court seeking to acquire by condemnation the rights-of-way across several dozen pieces of property in central Illinois. (The rights-of-way for the planned pipeline run underground, and the above-surface portions of the land can still be used by the landowners, albeit in a more limited manner.)  In August 2008, the district court confirmed the condemnations and authorized REX to take control of the rights-of-way.  Because this constituted a taking, each landowner was entitled to just compensation under the Fifth Amendment of the United States Constitution.

Most of the compensation claims of the affected landowners were resolved amicably. This appeal involves a dispute over the just compensation owed to the landowners of four particular tracts of land located in Sangamon County, near Springfield, Illinois.  The defendants-appellants are the owners of the four pieces of property: Robert and Bettie Burtle own two tracts of 40.69 acres and 20.24 acres, and Richard Watts is the trustee of a trust owning two tracts of 38.04 acres and 80 acres. The four properties are zoned for agricultural use, are currently used for agricultural farmland, and have been so used for more than 100 years.  The landowners do not challenge REX obtaining by eminent domain the underground easements across their properties; instead, they contest the amount of just compensation to which they are entitled for the easements taken and for damage to the remainder, if any.

After the discovery period, the landowners presented the testimony and reports of one expert witness, Doug Stallard, on the issue of how to value the properties with and without the easements.  REX also presented its own competing expert witness, Paul Reither, who similarly prepared written reports on the value of the properties.  REX then filed motions in limine seeking to bar Stallard's testimony and reports on the ground that they were unreliable under Federal Rule of Evidence 702.  The district court agreed and granted the motions in limine to exclude Stallard's opinion.  The district court declined to permit the landowners themselves to testify about the value of their properties because they had previously stated that they would rely on Stallard's evidence.  Because that left only the evidence presented by REX's expert, the district court concluded that there was no genuine issue of material fact on the issue of just compensation owed to the landowners.  Accordingly, the district court granted REX's motion for summary judgment and determined that the landowners were entitled to just compensation

in the amount of $22,000, $17,950, $19,000, and $18,000 for the four tracts of land—the values offered by REX's expert. The landowners now appeal the exclusion of Stallard as their expert witness and the denial of their opportunity to personally testify on the issue of just compensation.[1]

II.

When a right to a distinct tract of land is acquired through eminent domain, the landowners are entitled to "just compensation." U.S. Const. amend. V. The amount of

---

[1]The district court issued its judgment on August 3, 2010, and the landowners filed a first notice of appeal on August 25, 2010. This appeal was premature, however, because not all of the claims in the district court had yet been disposed of: one other group of defendants (the Bruntjen defendants, who are not parties to the case before us) owned a fifth tract of land and had not yet resolved their compensation dispute with REX. At that time, we flagged the landowners' appeal as premature and the landowners in our case moved for a voluntary dismissal of the appeal. The dismissal was granted on September 3, 2010.

The Bruntjen owners settled their dispute with REX in November 2010, and subsequently filed a stipulated motion for dismissal on December 30, 2010. On that same day, the magistrate judge—who had been designated by the district judge to handle negotiations and to conduct a possible mediation—entered a text order indicating that a settlement had been reached in the Bruntjen matter and dismissing the Bruntjen property owners as defendants.

Following this text order, the landowners of the four properties in our case filed a second notice of appeal on January 24, 2011. Because the notice of appeal followed the text order of a magistrate judge, we again flagged the appeal for possible improper jurisdiction because the magistrate judge's text order was not a final appealable judgment within the meaning of 28 U.S.C. § 1291. The parties were thus directed to address this jurisdictional issue first in memoranda filed with the court and then in their appellate briefs.

The parties have done so, and we see no jurisdictional concern. The defendant landowners in our case are not appealing the magistrate judge's text order but the judgment of the district court issued on August 3, 2010, which was the final adjudication of their rights. However, because that decision did not resolve all the claims of all the parties (as the Bruntjen claim remained open) and because the district court did not expressly determine that there was "no just reason for delay," at that time the decision was not a final judgment under Federal Rule of Civil Procedure 54. When the magistrate judge entered his text order on December 30, 2010, dismissing the Bruntjen owners, the claims of the defendant landowners were all that remained in the case. Although there was no accompanying Rule 58 final judgment issued by the district court, the absence of a final judgment does not prevent us from exercising jurisdiction over this appeal. *See Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 756 (7th Cir. 1988). "[T]here is no question about the finality of the district court's decision . . . ." *Id.* The case became final with the magistrate judge's text order on December 30, 2010, the defendants timely appealed, and we can exercise appellate jurisdiction. *Id.*

compensation "includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." *United States v. Grizzard*, 219 U.S. 180, 183 (1911). In this case, on the issue of compensation owed to them, the landowners presented only the opinion of one expert, Doug Stallard. Stallard arrived at his opinion by using the comparable sales method, an established method for determining the value of property in condemnations. *See Dep't of Conservation v. Dorner*, 548 N.E.2d 749, 752 (Ill. App. Ct. 1989).[2] In this method, the value of a taking is established by considering evidence of sales of comparable properties. *Id.* Stallard used the sales of ten properties that he deemed were sufficiently similar to the landowners' properties. Stallard also opined that the highest and best use of the landowners' properties without the pipeline easement was for commercial or residential use, even though the properties were currently only permitted and used for agricultural purposes. Using his ten comparables, Stallard first determined the property values for the four tracts of land without the easement, then determined the values for the four tracts with the easement, and finally calculated the difference between the values.

The district court excluded Stallard's opinion on the ground that it was based on unreliable evidence and failed to pass the requirements of Federal Rule of Evidence 702. In particular, the district court ruled that Stallard's opinion was not reliable because (1) seven out of Stallard's ten comparables were too dissimilar to the landowners' properties, (2) Stallard misapplied the formula for calculating damages to the remainder, and (3) there was no reasonable probability that the highest and best use of the properties was for commercial or residential use instead of agricultural use.

We review a district court's evidentiary ruling for an abuse of discretion. *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1183 (7th Cir. 1992). Also, because the admission or exclusion of expert testimony is left to the discretion of the district judge, the district court's decision "will generally not be disturbed unless it is manifestly erroneous." *Cella v. United States*, 998 F.2d 418, 423 (7th Cir. 1993) (citing *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)).

In this case, we cannot say that the district court abused its discretion in excluding Stallard's testimony. It was appropriate for the district court to find that a majority of Stallard's comparables were significantly dissimilar to the landowners' properties to be proper comparables. The comparable sales method considers sales of land that are similar "in locality, character, time, proximity, market conditions, improvements, and modes of payment." *Dep't of Transp. v. Central Stone Co.*, 558 N.E.2d 742, 745 (Ill. App. Ct. 1990) (internal quotation

---

[2]The district court noted that it is an open question in our circuit whether state or federal substantive law should be used to determine compensation in condemnation cases involving federal licensees. The parties and the district court believed that state substantive law applied. We do not need to resolve the question because the distinction makes no appreciable difference in this case.

omitted). But several of Stallard's comparables were subdivided lots, making them unsuitable for comparison with the landowners' unsubdivided properties. *See Cent. Ill. Pub. Serv. Co. v. Gibbel*, 382 N.E.2d 846, 849 (Ill. App. Ct. 1978) ("[I]t has been consistently held that property which has been subdivided into lots is not similar to an unsubdivided or acreage property."). Other purported comparables were commercially zoned and located in municipalities with characteristics dissimilar to the landowners' agricultural properties. And one of Stallards' comparables used a sale price of $600,000, but the sale was never completed and the property was later sold for $250,000; this wide variance in prices made the $600,000 value unreliable. In short, it was not an abuse of discretion for the district court to exclude seven out of Stallard's ten comparables. *See United States v. 2635.04 Acres of Land*, 336 F.2d 646, 649 (6th Cir. 1964) ("Comparability is essentially a question of fact and trial judges have a broad discretion in ruling on the admissibility of evidence of comparable sales."). With a majority of the comparables excluded, Stallard's calculations of the mean, median, standard deviation, and range of the property values would have been substantially reduced and, naturally, his final opinion of the value of the landowners' properties would have been similarly affected.

In addition, Stallard speculated that the highest and best use of the landowners' properties was for commercial or residential use, even though the properties were only zoned and used for agricultural purposes. Determining just compensation requires a consideration of the fair market value of the property "at its highest and best use." *City of Chicago v. Anthony*, 554 N.E.2d 1381, 1383 (Ill. 1990). Generally, the highest and best use of a property is presumed to be the property's current use, but it can also be a future use if the property has a future use "which may be anticipated with reasonable certainty." *Id.* (quoting *Crystal Lake Park Dist. v. Consumers' Co.*, 145 N.E. 215, 219 (Ill. 1924)); *see also Dep't of Transp. v. Western Nat'l Bank*, 347 N.E.2d 161, 165 (Ill. 1976) ("It is proper to base value upon the highest and best use permitted, not only under existing but also under other zoning classifications where there is reasonable probability of the granting of such zoning in the near future."). In this case, the district court examined the record and determined that there was no reasonable certainty that the landowners' properties would be rezoned from their current agricultural use and later developed for commercial or residential purposes. There is nothing in the record to make us question the determination of the district court that the highest and best use of the four properties was agricultural.

Because of the above two considerations, we cannot say that the district court abused its discretion in excluding Stallard's opinion. Under Federal Rule of Evidence 702, a witness qualified as an expert can give expert testimony if "the testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). Here, the district court found that the data underlying Stallard's calculations were not sufficiently reliable because the majority of the comparables were dissimilar and because the highest and best use of the properties was not commercial or residential. It was not an abuse of discretion for the district court to find that the insufficiency

of Stallard's data undermined the reliability of his final conclusions about the properties' values.[3]

Finally, the landowners argue that they, as the owners, should have the opportunity to testify about the values of their properties. Although this is true, the district court correctly recognized that this right to testify is not unqualified. In their depositions, the landowners did not give an opinion about the values of their properties, but instead relied on Stallard's opinion. By the time the district court considered REX's motions in limine and motion for summary judgment, the discovery period was over and the landowners had presented no other evidence on the issue of valuation. In fact, in the landowners' response to REX's summary judgment motion, the landowners did not give their lay opinions on the issue of valuation and stated that their opinions might change or develop in the future. The district court determined that the time for timely disclosure on this issue had run and that it would be unfair to allow the landowners to present a new opinion during or on the eve of trial. We see no abuse of discretion in this decision. The landowners had the opportunity to present their lay opinions during the discovery period. They could have also supplemented their discovery under Federal Rule of Civil Procedure 26 or filed a motion for additional time to take discovery under Federal Rule of Civil Procedure 56(d). But they neglected to do so. REX presented reasonable evidence about the values of the landowners' properties as they were affected by the easements, and with no competing evidence, the district court did not err in entering summary judgment and awarding the compensation amounts determined by REX's expert to the landowners.

AFFIRMED.

---

[3]The district court also took issue with Stallard's methodology in calculating the damages to the landowners' properties and the compensation owed. Stallard's method was to value the entire property before the easement and after the easement. REX argues that the proper method is to value the damage to the strip land containing the easement, and then to determine whether there is damage to the remainder—i.e., the remaining portion of the property excluding the easement strip. REX argues that Stallard should have specifically calculated the value of the remainder and that his mistaken methodology could create the potential for misleading the jury and lead to a possible double recovery due to confusion over what is the "remainder." We are not convinced that this confusion could not be clarified before the case was presented to the jury, but, regardless, we do not need to address this issue because the district court did not abuse its discretion in excluding Stallard's evidence for the reasons given above.